GLADYS L. MCDONALD, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF JOHN MCDONALD, DECEASED, C.F. CORNELIUS, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 37673-84, 37694-84.[1]    Filed August 18, 1987.

---

[1]These cases were consolidated for purposes of briefing and opinion.

*Garry A. Pearson*, for the petitioners.
*Gail K. Gibson*, for the respondent.

## OPINION

GERBER, *Judge*: Respondent determined a $90,163.37 Federal gift tax deficiency regarding Gladys L. McDonald for the taxable quarter ended September 30, 1981, and a $152,013.67 estate tax deficiency for the Estate of John McDonald. These cases were submitted fully stipulated pursuant to Rule 122.[2] The stipulated facts and attached exhibits are incorporated herein by this reference.

The two issues presented for our consideration are (1) whether a disclaimer is a qualified disclaimer under section 2518 or a disclaimer executed within a reasonable time under section 2511,[3] and (2) whether the Estate of John McDonald is entitled to section 2032A special use valuation.

John McDonald (decedent), a resident of Grand Forks, North Dakota, died testate on January 16, 1981. He was survived by Gladys L. McDonald (his widow and one of the petitioners[4] herein), four children, and three grandchildren. At the time the petitions in these cases were filed,

---

[2] All Rule references are to the Tax Court Rules of Practice and Procedure, and unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect at all relevant times.

[3] Sec. 2518 is applicable only to "transfers creating an interest in the person disclaiming made after December 31, 1976." Sec. 2009(e)(2), Pub. L. 94-455, 90 Stat. 1896. Sec. 2511 and the regulations thereunder apply otherwise. Which section applies herein depends upon our resolution of the issue of when the transfer creating the interest occurred.

[4] For convenience, we refer to Gladys L. McDonald as petitioner and to the Estate of John McDonald (the other petitioner) as "estate."

petitioner Gladys L. McDonald resided in Arvilla, North Dakota, and C.F. Cornelius, the personal representative of the decedent's estate, resided in Larimore, North Dakota.

On September 23, 1981, petitioner signed a renunciation (sometimes referred to as disclaimer) of "all her right, title, and interests, devolving to her by testacy, intestacy, as surviving joint tenant, or otherwise to all property described on the attached Schedule A."[5] Copies of the disclaimer were delivered to C.F. Cornelius (Cornelius), the personal representative of decedent's estate, and to three of the four surviving children.[6] Petitioner and the decedent acquired title to each of the joint tenancy properties listed in the disclaimer from unrelated third parties, with the exception of parcels "4" and "6," which were first acquired by petitioner in her own name, and then conveyed to petitioner and decedent as joint tenants with right of survivorship.[7] A Federal estate tax return was timely filed on October 7, 1981, at the Grand Forks Office of the Internal Revenue Service. Decedent's last will and testament was attached to the return. Also included in the return was an election for section 2032A special use valuation and an agreement to be responsible for additional estate tax (recapture agreement) if the qualified use was terminated prematurely. Both statements were signed by petitioner and Cornelius.

An amended Federal estate tax return was filed with the Internal Revenue Service at Ogden, Utah, on February 26, 1982. Included in the amended return was an agreement for section 2032A special use valuation signed by three of decedent's children (Virlyn McDonald, Gladys Jean Cox, and Dorothy Spicer), and two grandchildren (Kathy McDonald and Lori McDonald). Under the terms of dece-

---

[5] The renunciation disclaimed the decedent's interest in the real property held in joint tenancy.

[6] The surviving child who did not receive a copy of the renunciation, Viola McDonald, at that time was mentally impaired and required full-time skilled care. All other surviving children were present at the signing of the renunciation.

[7] All joint tenancy property was acquired prior to 1976. Parcels four and six were acquired by petitioner in 1941 and 1943, respectively, and conveyed in 1947 to herself and decedent as joint tenants. The date of transfer of the other parcels of joint tenancy property was not stipulated to or made a part of the record. We assume that all such property was put into joint tenancy before 1955, because neither party has asserted the applicability of sec. 2515, as in effect in the Internal Revenue Code of 1954 until its repeal by the Economic Recovery Tax Act of 1981.

dent's last will and testament, the three children inherited the property in question in the event petitioner did not survive decedent.

## The Disclaimer

These issues arise under circumstances where a joint owner of property disclaims his survivorship interest in the property, shortly after the death of the other joint owner. The question to be answered is whether the disclaimer must occur within (1) reasonable proximity to the creation of the joint tenancy or (2) reasonable proximity to the death of the deceased joint owner in order to be timely and thus escape the imposition of Federal gift tax. If the disclaimer is timely, the property is treated as having passed directly from the decedent to the other heirs. Under these circumstances the disclaiming individual, who is not considered the transferor of the disclaimed property, will not owe gift tax in connection with the said property. Rather, the decedent's estate will owe estate tax on the disclaimed portion of the property. Conversely, if the disclaimer is not timely, the disclaimant is considered the transferor of the property and the transfer from said disclaimant to the heirs will be subject to gift tax.[8] See sec. 2501 and sec. 2511.[9]

We have recently addressed this issue in a Memorandum Opinion, which was reversed by the Circuit Court of Appeals for the Seventh Circuit. *Kennedy v. Commissioner*, 804 F.2d 1332 (7th Cir. 1986).[10] Petitioners ask us to follow the Seventh Circuit's opinion in *Kennedy* and respondent urges that we follow the reasoning set forth in our Memorandum Opinion.[11] After careful consideration, we disagree with the Seventh Circuit's holding and instead follow the holding and rationale set forth in our Memoran-

---

[8]Accordingly, where property is jointly owned by two people, and a timely disclaimer is not made, Federal gift tax will be imposed on 50 percent (the portion being disclaimed) of the fair market value of the property.

[9]Sec. 2501 provides the general rule that a tax is imposed on transfers of property by gift. Sec. 2511 provides that the tax shall apply whether the transfer is "in trust or otherwise" and whether the gift is "direct or indirect."

[10]For convenience, when discussing the facts, we will simply refer to "*Kennedy*" when discussing the Circuit Court's opinion or our Memorandum Opinion.

[11]A proper appeal in this case would lie in the Eighth Circuit not the Seventh Circuit. Accordingly, we are not bound by the Seventh Circuit's opinion in *Kennedy v. Commissioner*, 804 F.2d 1332 (7th Cir. 1986). See *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971).

dum Opinion, which is more in line with the Supreme Court's reasoning in *Jewett v. Commissioner*, 455 U.S. 305 (1982).[12]

The facts in *Kennedy* and in the case at hand are substantially similar. *Kennedy* involved Pearl Kennedy's (Pearl) disclaimer of her survivorship interest in joint tenancy property within 9 months of her late husband Frank's (Frank) death. Pearl and Frank acquired the property in 1953; Frank furnished all of the consideration for the purchase. No taxable gift was reported in connection with the creation of the joint tenancy.

Frank died testate in 1978, and Pearl disclaimed an undivided one-half interest in the property about 9 months later. The disclaimer was effective under Illinois law to vest the disclaimed interest in Pearl's daughter Marsha, who received it pursuant to the terms of Frank's will. The value of the property was included in Frank's estate and reported on his estate's Federal estate tax return.

The critical issue in *Kennedy* (and in the instant case) is which event began the period for testing whether the disclaimer was timely: the creation of the joint tenancy or the death of the joint tenant. In the *Kennedy* Memorandum Opinion, we concluded that the event which began the period for testing the timeliness of the disclaimer of the undivided one-half interest in the property was the creation of the joint tenancy. Accordingly, we found that Pearl's disclaimer, executed many years after the creation of the joint tenancy, was not executed within a reasonable time, within the meaning of section 25.2511-1(c), Gift Tax Regs., and therefore her disclaimer effected a transfer of an interest in property subject to Federal gift tax. In so concluding, we relied on *Jewett v. Commissioner*, 455 U.S. 305 (1982).

*Jewett* involved a testamentary trust and four generations of Jewetts. The taxpayer (disclaimant) was in the third generation. Under the terms of the trust, the taxpayer would receive 1 share of the trust corpus, if he survived his mother; if he predeceased her, that share would be distributed to his issue. The trust was created in 1939; the taxpayer disclaimed his interest in 1972.

---

[12]For convenience, we will refer to this case as "*Jewett*."

Respondent determined that the two disclaimers executed were indirect transfers of property by gift within the meaning of sections 2501(a)(1) and 2511(a),[13] and that they were not within the exception of section 25.2511-1(c), Gift Tax Regs.[14] The controversy involved whether the word "transfer" refers to the time of creation of the remainder interest[15] (by the taxpayer's grandmother's will) or to the vesting or distribution of that interest to the taxpayer or his issue. The Supreme Court, in analyzing the regulations, focused on (1) the lack of reference to future interests or remainders and the references to testamentary transfers, and (2) the requirement therein that the recipient know of the "transfer," noting that the second point seems superfluous if the relevant point for testing the timeliness of a disclaimer is at the distribution of the assets. The Supreme Court concluded that for purposes of Gift Tax Regulations section 25.2511-1(c), the "transfer" took place at the testator's death, the time the interest was created. Accordingly, the Supreme Court found that the disclaimers made 33 years after the creation of the interest and 24 years after the taxpayer reached the age of majority were not made within a reasonable time.[16]

In *Kennedy*, the Circuit Court attempted to factually distinguish *Jewett* by focusing on a joint tenant's ability to partition under Illinois State law. The Circuit Court noted that under Illinois law, partition caused by either spouse or by divorce would have ended the right of survivorship. The

---

[13]See note 9 *supra*.

[14]Gift Tax Regs. sec. 25.2511-1(c) provides in pertinent part:

"The gift tax also applies to gifts indirectly made. Thus, all transactions whereby property or property rights or interests are gratuitously passed or conferred upon another, regardless of the means or device employed, constitute gifts subject to tax. See further sec. 25.2512-8. Where the law governing the administration of the decedent's estate gives a beneficiary, heir, or next-of-kin a right to completely and unqualifiedly refuse to accept ownership of property transferred from a decedent (whether the transfer is effected by the decedent's will or by the law of descent and distribution of intestate property), a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer."

[15]In *Jewett*, both this Court and the Supreme Court assumed the taxpayer's interest to be a contingent remainder. The Supreme Court noted that the taxpayer's interest instead may be characterized as a vested remainder subject to divestment, but did not find the distinction one of substance for purposes therein. *Jewett v. Commissioner*, 455 U.S. 305, 309 n. 5 (1982).

[16]See also *Poinier v. Commissioner*, 86 T.C. 478 (1986), where we relied on *Jewett*, and concluded that a disclaimer of a remainder interest executed 5 days after the death of the life tenant and some 33 years after creation of the interest was not made within a reasonable time as required under sec. 25.2511-1(c), Gift Tax Regs.

Court equated this power to partition with a general power of appointment, because Frank's exercise of either could result in the use of the property by or transfer of the property to his creditors or legatees, rather than Pearl. Considering *Jewett* distinguished, the Circuit Court went on to conclude that in States such as Illinois, that allow any tenant to partition the property at will:

the gift of a joint tenancy with right of survivorship should be treated as more than one transfer * * * . One transfer is an undivided interest, given on the date the tenancy is created. Additional transfers occur on the death of other joint tenants. * * * [*Kennedy v. Commissioner, supra* at 1336.]

Based upon this reasoning, the Circuit Court reversed our Memorandum Opinion and remanded the case to this Court to determine whether Pearl made a "qualified disclaimer" under section 2518 and the regulations thereunder.

Upon reconsideration of this issue, we are not persuaded that our analysis in the Memorandum Opinion is incorrect. Under North Dakota law, a joint tenant's interest, including the right of survivorship, stems from the original conveyance, the original joint tenancy deed. *Jamestown Terminal Elevator, Inc. v. Knopp*, 246 N.W.2d 612, 613 (N.D. 1976) (The right of survivorship is in the whole interest conveyed by the original joint tenancy deed, not merely in the deceased joint tenants' moiety.); see *Schlichenmayer v. Luithle*, 221 N.W.2d 77, 83 (N.D. 1974), and *In re Kaspari's Estate*, 71 N.W.2d 558, 564 (N.D. 1955); see also *Harms v. Sprague*, 105 Ill. 2d 215, 473 N.E.2d 930 (1984).[17] We do not view the fact that joint tenancy interests may be severed by partition, alienation, or sale under execution upon a judgment lien, inter alia, under North Dakota law as a persuasive basis on which to distinguish *Jewett*. First, under these facts, the right and interest of a surviving joint tenant was fixed and undisturbed from the creation of the tenancies through the death of decedent. Under North Dakota law, sole ownership of the fee is contingent upon the survival of one of the joint tenants. "The surviving

---

[17]The North Dakota Century Code defines a joint tenancy interest, in pertinent part as: "one owned by several persons in equal shares by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy." N.D. Cent. Code sec. 47-02-06 (1978).

joint tenant does not take the interest of the deceased joint tenant; rather, the contingent remainder vests in the survivor because the contingency (survival of the cotenant) has been met."[18] *Jamestown Terminal Elevator, Inc. v. Knopp, supra* at 614. As we stated in *Kennedy*, "This feature is a contingency that is not * * * materially different than the contingency faced by the disclaiming taxpayer in *Jewett*." *Kennedy v. Commissioner*, 51 T.C.M. 232, 233, 55 P-H Memo T.C. par. 86,003, at 86-9 (1986), revd. 804 F.2d 1332 (7th Cir. 1986). Second, North Dakota law, although permitting partition or severance of joint tenancies, only permits it in limited circumstances and certainly not at the whim of a joint tenant. See *Jamestown Terminal Elevator, Inc. v. Knopp, supra*; *Renz v. Renz*, 256 N.W.2d 883, 885 (N.D. 1977).

It is an established common law principle that:

"The interest of two joint tenants is not only equal or similar, but also is one and the same. One has not originally a distinct moiety from the other; but, if by any subsequent act (as by alienation or forfeiture of either) the interest becomes separate and distinct, the joint tenancy instantly ceases. But, while it continues, each of two joint tenants has a concurrent interest in the whole; and therefore, on the death of his companion, the sole interest in the whole *remains* to the survivor." [*Jamestown Terminal Elevator, Inc. v. Knopp, supra* at 613-614, citing 2 W. Blackstone, Commentaries 184-185. Emphasis added.]

We, therefore, find that petitioner's interests in the various properties at issue were created by taxable transfers[19]

---

[18]We recognize that under North Dakota law, joint tenancy is a creature of statute. See note 17 *supra*; see also *Renz v. Renz*, 256 N.W.2d 883 (N.D. 1977). However, we do not view a surviving joint tenant's right to disclaim under North Dakota law "as a separate interest in any property or interest therein devolving to him by right of survivorship," as determinative of whether the surviving joint tenant's interest in the right of survivorship stemmed from the creation of the deed or as creating a "transfer" for Federal gift tax purposes. See N.D. Cent. Code sec. 47-11.1-01 (1978). Contra *Ferguson v. United States*, an unreported case (D. Ariz. 1981, 48 AFTR2d 81-6252, 81-1 USTC par. 13,409); *Hoffman v. United States*, an unreported case (D. Neb. 1984, 56 AFTR2d 85-6553, 85-2 USTC par. 13,630). Nor do we find a person's ability to timely disclaim a "future interest" within 6 months of that interest's becoming "indefeasibly vested" under North Dakota law as determinative. See N.D. Cent. Code sec. 47-11.1-02 (1978). The issue of whether petitioner's disclaimer was executed within a "reasonable time * * * of the transfer to him" is an issue of Federal law not controlled by State law. See *Jewett v. Commissioner*, 70 T.C. 430, 433 (1978), affd. 638 F.2d 93 (9th Cir. 1980), affd. 455 U.S. 305 (1982). "While a State court might be willing to accept a renunciation of a nonpossessory and not indefeasibly vested property interest after the passage of considerable time, so long as the interests of third parties have not been harmed, the passage of time is crucial to the scheme of the gift tax." *Jewett v. Commissioner, supra* at 437.

[19]This case was submitted fully stipulated, and generally petitioner has not provided the dates of the creation of the joint tenancies. Furthermore, the parties have limited their briefs

before 1976[20] and, accordingly, any disclaimer of such interests is governed by section 2511 and the regulations thereunder. Gift Tax Regulations section 25.2511-1(c), as pertinent herein, provides that a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer.[21] We conclude that, under these circumstances, the transfer of the joint property interest occurred at the creation of the joint tenancy and that petitioner's 1981 disclaimer was not made within a reasonable time.

## Special Use Valuation

Section 2032A permits, for estate tax purposes, special use valuation of real property on the basis of actual use (farming) rather than at the traditional fair market value, which may exceed the value when the property is used for farming. Special use valuation is available to an estate, only if it meets specific requirements.[22]

Respondent contends that the estate tax return did not contain a valid election because three of the four "qualified heirs" did not sign the statement of election or recapture statement, and that the return likewise did not "substantially comply" or provide "substantially all" of the required information. Petitioner contends: (1) That a proper section 2032A election was made on the estate tax return; (2) alternatively, that the election on the estate tax return "substantially complie[d]" or provided "substantially all" of the required information; and (3) that the amended return

---

as to when the "transfer" occurred. Accordingly, we assume that sec. 2515, as in effect in the Internal Revenue Code of 1954 until its repeal by the Economic Recovery Tax Act of 1981, is not applicable, and that the joint tenancies were created by taxable transfers. (See note 7 *supra*.)

[20]Because of this holding, it is not necessary to consider the relevance, if any, to be given to the fact that petitioner originally acquired title to the two parcels in her own name. Cf. Rev. Rul. 83-35, 1983-1 C.B. 745.

[21]See note 14 *supra*. Gift Tax Reg. sec. 25.2511-1(c) has been amended by T.D. 8905, 1986-35 I.R.B. 6, but the changes do not affect the outcome in this case.

Gift Tax Regulation sec. 25.2511-(1)(c) also requires that: (1) The law governing the administration of the decedent's estate gives a beneficiary, heir or next-of-kin a right completely and unqualifiedly to refuse to accept ownership. (2) The refusal must be unequivocal and effective under the local law. (3) There can be no refusal of ownership of property after its acceptance. These additional requirements are not at issue in this case.

[22]See sec. 2032A(b); *Estate of Clinard v. Commissioner*, 86 T.C. 1180 (1986); *Estate of Davis v. Commissioner*, 86 T.C. 1156 (1986).

corrected any deficiencies in the original return. Respondent counters that the amended return could not correct the original return. We agree with respondent on both points.

In deciding this issue, we will first determine whether the section 2032A election on the original estate tax return was sufficient to qualify the estate for the benefits of section 2032A, and if not, whether the insufficiency was cured by means of the amended estate tax return.

Section 2032A(d) requires that the estate must make an election "[no] later than the time prescribed by section 6075(a) for filing the return of tax imposed by section 2001 (including extensions thereof), and * * * in such manner as the Secretary shall by regulations prescribe."[23]

Estate Tax Regulations section 20.2032A-8(a)(3) states that:

An election under this section is made by attaching to a timely filed estate tax return the agreement described in paragaph (c)(1) of this section and a notice of election which contains the following information:

> \*    \*    \*    \*    \*    \*    \*

(xii) The name, address, taxpayer identification number, and relationship to the decedent of each person taking an interest in each item of specially valued property, and the value of the property interests passing to each such person based on both fair market value and qualified use;

> \*    \*    \*    \*    \*    \*    \*

If neither an election nor a protective election is timely made, special use valuation is not available to the estate. See secs. 2032A(d)(1), 6075(a), and 6081(a).[24]

Estate Tax Regulation section 20.2032A-8(c)(1) further provides that: "The agreement required under section 2032A(a)(1)(B) and (d)(2) must be executed by all parties who have any interest in the property being valued based on its qualified use as of the date of the decedent's death." Estate Tax Regulations section 20.2032A-8(c)(2) states that "An interest in property is an interest which, as of the date of the decedent's death, can be asserted under applicable

---

[23]In 1981, Congress amended sec. 2032A(d)(1) to allow the election to be made on the first estate tax return, regardless whether the return is timely filed. This amendment is expressly made applicable to estates of decedents who died after Dec. 31, 1981, however, and as such does not apply herein. See Economic Recovery Tax Act of 1981, Pub. L. 97-34, secs. 421(j)(3) and 421(k)(1), 95 Stat. 313.

[24]Petitioner does not argue that a "protective election" was made.

local law so as to affect the disposition of the specially valued property by the estate."

The estate first contends that petitioner was the sole individual with an interest in the property on the date of decedent's death, and accordingly, the only person required to sign the section 2032A election statement and recapture agreement. The estate generally accepts applicability of the "relation back" doctrine applied to renunciations under North Dakota law, which would treat the person who renounced as though she had predeceased the testator. See N.D. Cent. Code sec. 47-11.1-01 and sec. 47-11.1-04 (1978). However, the estate argues that the "judicial fiction of the doctrine of relation back of a disclaimer is simply out of place," when dealing with a "federal statute which specifically requires reference to 'as of the date of the decedent's death,' with regulations that echo that requirement and where both that statute and the regulations have been followed to the letter." The estate further argues that it followed the statute and regulations which do not contemplate disclaimers. Alternatively, the estate contends, that it should be afforded section 2032A special use valuation because it substantially complied with the election provisions or provided substantially all of the information required, and amended the return to include all of the necessary information.

Respondent, on the other hand, maintains that the initial section 2032A election was not sufficient to meet the requirements of section 2032A(a)(1)(B) and (d)(2) as interpreted by Estate Tax Regulations section 20.2032A-8(c) because it did not contain "the signatures of three of the four qualified heirs to the property for which special use valuation was requested." Furthermore, respondent contends that the amended return did not serve to remedy the incomplete election on the estate tax return.

Neither party has provided any cases on point. Respondent references a number of cases where we have found section 2032A elections to be insufficient, where no election was attempted on a timely original estate tax return and an amended return was filed (after the due date of the original return, including extensions) containing a section 2032A

election statement.[25] Respondent has also advanced a number of cases which stand for the general proposition that taxpayers must strictly comply with section 2032A in order to receive the statutory relief.[26] We view the amended return cases cited by respondent as not determinative but analogous, because the fact patterns are, to some extent, similar.

In the case at hand, the estate timely filed an estate tax return, and attached to that return a section 2032A election along with a recapture agreement, both signed by petitioner and Cornelius. The estate did not provide the additional information on the amended return within the period permitted by the statute and regulations. See sec. 2032A(d). In considering whether the original return contained a proper section 2032A special use valuation election, we must determine whether the election statement and recapture agreement contained the necessary signatures. Both documents were signed by petitioner and Cornelius. Because at the time of filing the estate tax return, petitioner had renounced her interest in the properties at issue,[27] it was clear that under North Dakota law, petitioner no longer possessed any interest in the property.[28] Under local law, petitioner was treated as though she predeceased the decedent, and the property devolved to the other heirs. See Estate Tax Reg. sec. 20.2032-8(c)(2);[29] N.D. Cent. Code sec. 47-11.1-03 (1978). The requirement that persons with an interest in the property sign both the section 2032A election statement and the recapture agreement is an

---

[25]E.g., *Carmean v. United States*, an unreported case (4 Cl. Ct. 181 (1983)); *Estate of Boyd v. Commissioner*, T.C. Memo. 1983-316; *Estate of Young v. Commissioner*, T.C. Memo. 1983-686; *Teubert v. United States*, an unreported case (D. Minn. 1983, 51 AFTR2d 1340, 83-1 USTC par. 13,513).

[26]E.g., *Estate of Cowser v. Commissioner*, 736 F.2d 1168 (7th Cir. 1984), affg. 80 T.C. 783 (1983); *Estate of Abell v. Commissioner*, 83 T.C. 696 (1984); *Estate of Coon v. Commissioner*, 81 T.C. 602 (1983); *Estate of Geiger v. Commissioner*, 80 T.C. 484 (1983).

[27]We note that the renunciation was dated Sept. 23, 1981, approximately 2 weeks before the original estate tax return was filed Oct. 7, 1981.

[28]Curiously, neither petitioner in filing the estate tax return, nor respondent in auditing it, took the position that the disclaimer otherwise affected the estate tax. The estate claimed and respondent permitted the marital deduction to the full extent provided by law, without regard to the disclaimer, even though a large part of the marital deduction was attributable to jointly held property.

[29]Of course, in this instance, local law is determinative of ownership and Federal law dictates the tax consequences. However, we note that the tax consequences do not change the realities of ownership and use for other purposes. See *Riggs v. Del Drago*, 317 U.S. 95, 98-101 (1942).

essential element of the special use valuation provision. Without these signatures, it is not clear that the ultimate recipients of the section 2032A special use valuation benefit would be subject to recapture.[30] We therefore conclude that the attempted section 2032A election on the original estate tax return did not meet the statutory and regulatory requirements.[31]

The estate argues, in the alternative, that even though the original timely filed estate tax return did not include all of the required information for a proper section 2032A election, that the original return "substantially complie[d]" or included "substantially all" of the required information within the meaning of section 2032A as amended. The estate contends that it is entitled to section 2032A valuation because it later provided an amended return containing the signatures of the "qualified heirs." Again, we disagree. An amended return outside of the time limitation will not serve to retroactively cure the insufficiencies of the original return. We recently decided an analogous situation where necessary information was untimely submitted and found insufficient to cure the original defect. *Estate of Gunland v. Commissioner*, 88 T.C. 1453 (1987).

For purposes relevant herein, section 2032A has been amended twice: (1) Section 2032(A)(d)(3), as added by the Deficit Reduction Act of 1984, provides, in pertinent part, that for estates of decedents dying after December 31, 1976, the executor will have a reasonable period of time (not exceeding 90 days) within which to provide additional information if the election substantially complies with the

---

[30]The Joint Committee explains that filing a written agreement evidencing the consent of each party (who has an interest in the property) to the application of the recapture tax provisions (which amount to a consent to be personally liable for any recapture tax imposed), is a requirement for making a valid election, and further notes: "The Congress believed that each person receiving an interest subject to potential recapture should agree to this potential liability, especially since that person may not have received the tax benefits from the special use valuation (because, for example, the estate tax burden is borne by a residuary legatee who did not receive farm property)." Staff of Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976, 1976-3 C.B. (Vol. 2) 548, 555. We also recognize that sec. 2032A(c)(6) separately provides the general rule that "the qualified heir shall be personally liable for the additional tax imposed" (with respect to the qualified heir's interest in the property) without reference to the recapture agreement itself.

[31]As previously noted, without the heirs' signatures, the election on the original return may not effectively bind the heirs. Compare *Atlantic Veneer Corp. v. Commissioner*, 85 T.C. 1075 (1985), affd. 812 F.2d 158 (4th Cir. 1987); *DeMarco v. Commissioner*, 87 T.C. 518 (1986), on appeal (1st Cir., Jan. 15, 1987); *Tipps v. Commissioner*, 74 T.C. 458, 468 (1980); *Valdes v. Commissioner*, 60 T.C. 910, 915 (1973).

regulations; and (2) section 1421 of the Tax Reform Act of 1986 provides that if the executor made a section 2032A election and provided substantially all the information with respect to such election, that the election will be valid if the executor provides the additional information within 90 days of receipt of respondent's request.[32] These two amendments were added to remedy perceived rigidity in the potential applicability of section 2032A.

Section 2032A(d)(3), as added by the Deficit Reduction Act of 1984 (the 1984 amendment), provides:

(3) MODIFICATION OF ELECTION AND AGREEMENT TO BE PERMITTED.— The Secretary shall prescribe procedures which provide that in any case in which—

(A) the executor makes an election under paragraph (1) within the time prescribed for filing such election, and

(B) substantially complies with the regulations prescribed by the Secretary with respect to such election, but—

(i) the notice of election, as filed, does not contain all required information, or

(ii) signatures of 1 or more persons required to enter into the agreement described in paragraph (2) are not included on the agreement as filed, or the agreement does not contain all required information,

the executor will have a reasonable period of time (not exceeding 90 days) after notification of such failures to provide such information or agreements.

Reference to the Conference report regarding section 2032A(d)(3) provides some assistance in determining whether an election "substantially complie[d]" with the regulations: "To be eligible for perfection, the agreement as originally filed must at a minimum be valid under state law and must include the signatures of all parties having a present interest or a remainder interest *other than an interest having a relatively small value*." (H. Rept. 98-861 (Conf.) (1984), 1984-3 C.B. (Vol. 2) 495. Fn. ref. omitted; emphasis added.)

Section 1421 of the Tax Reform Act of 1986 (the 1986 amendment) provides, in pertinent part:

---

[32]Tax Reform Act of 1986, Pub. L. 99-514, sec. 1421, 100 Stat. 2717, as provided in subsec. (c), applies to all estates except .those where before the date of enactment (Oct. 22, 1986) the statute of limitations has expired with respect to (1) the return of tax imposed by sec. 2001, I.R.C. 1954, or (2) the period during which a claim for credit or refund may be timely filed.

(a) In General. —In the case of any decedent dying before January 1, 1986, if the executor—

(1) made an election under section 2032A of the Internal Revenue Code of 1954 on the return of tax imposed by section 2001 of such Code within the time prescribed for filing such return (including extensions thereof), and

(2) provided substantially all the information with respect to such election required on such return of tax, such election shall be a valid election for purposes of section 2032A of such Code.

(b) Executor Must Provide Information.—An election described in subsection (a) shall not be valid if the Secretary of the Treasury or his delegate after the date of the enactment of this Act requests information from the executor with respect to such election and the executor does not provide such information with 90 days of receipt of such request.

The Conference report concerning section 1421 of the Tax Reform Act of 1986, indicates that the amendment was enacted specifically to compensate for incomplete instructions in one version of the estate tax return (Form 706). H. Rept. 99-841 (Conf.) at II-770 (1986) (to accompany H.R. 3838), 1986-3 C.B. (Vol. 4) 770-771.

We must determine whether a section 2032A election on a timely filed estate tax return that fails to include at least three qualified heirs "substantially complies" or includes "substantially all" of the required information within the meaning of the above amendments.

Unfortunately, it appears that the Estate's factual situation falls far outside of either amendment's ambit. The 1984 amendment provides that a return that does not include all of the necessary signatures may still substantially comply with the election provision, and thus be modified to include all necessary information, but the Conference report indicates that the intended missing signatures were those of persons with relatively small interests in the property. The 1986 amendment was enacted specifically to allow for incomplete instructions on one version of the estate tax return, which version was not used in the case at hand.

The attempted election on the original return lacked most of the necessary signatures of the persons with interests in the property. The timely filing of a proper election, including the signatures on a recapture agreement, is an essential

requirement for a section 2032A election.[33] See *Estate of Gunland v. Commissioner*, 88 T.C. 1453 (1987). Because of the limited nature of the above quoted amendments as explained by the Conference reports, we are compelled to conclude that the section 2032A election on the original estate tax return was insufficient to permit perfection under either statutory amendment. Accordingly, we conclude that the estate is not entitled to section 2032A special use valuation.

*Decisions will be entered for the respondent.*

Reviewed by the Court.

STERRETT, CHABOT, WHITAKER, KÖRNER, HAMBLEN, COHEN, SWIFT, WRIGHT, and WILLIAMS, *JJ.*, agree with the majority opinion.

---

NIMS, *J.*, dissenting: I respectfully dissent from the majority's holding on the disclaimer issue. The majority attempts to apply *Jewett v. Commissioner*, 455 U.S. 305 (1982), but on facts parallel to those in our case, the Seventh Circuit has pointed out the defect in our analysis. *Kennedy v. Commissioner*, 804 F.2d 1332 (7th Cir. 1986), revg. and remanding T.C. Memo. 1986-3. The Circuit Court said:

> *Jewett* shows that a belated disclaimer may be a taxable gift even though the person disclaiming has no current access to the money and may never receive it. The IRS believes that this compels a conclusion that Pearl Kennedy had only a "reasonable" time after 1953 to disclaim and to have the transaction treated as a gift from Frank Kennedy to their daughter. The problem with this position is that the interests of the different generations of Jewetts were fixed in 1939. One could get out the actuarial tables in 1939 or 1972 and determine how much each person's share was worth. Frank's gift to Pearl in 1953 did not fix the rules for succession, however, because of the right to partition the property. [804 F.2d at 1334.]

In other words, the Jewett interests become *irrevocable* with the creation of the trust at Mrs. Jewett's death, whereas Frank Kennedy's gift to Pearl, i.e., the right of

---

[33]We have also found an attempted sec. 2032A election made on an estate tax return filed late to be insufficient, regardless of whether the late filing was due to reasonable cause. *Estate of Boyd v. Commissioner*, T.C. Memo. 1983-316.

Pearl to receive Frank's interest when Frank died, was *revocable* until Frank's death, when it became *irrevocable*.[1] Under section 2518(b)(2)(A), taxpayer then had 9 months within which to disclaim, which she did.

It is not perfectly clear from the majority opinion to what extent the McDonald joint interests created under North Dakota law parallel the Illinois joint interests in *Kennedy*. Nevertheless, the majority concedes that North Dakota law permits partition or severance of joint tenancies under some conditions. In this connection, it may be stated as a general proposition that in most common law jurisdictions, at least, a joint tenancy in real estate is entirely distinguishable from a tenancy by the entirety between husband and wife with right of survivorship. In the latter case, there is no power of severance based, no doubt, upon the "amiable fiction" of common law that husband and wife are one person. See *United States v. Jacobs*, 306 U.S. 363, 369 (1939).

It may also be noted that the timing in the case before us is worlds apart from that in *Jewett*. In *Jewett*, the various interests were fixed in 1939 when Mrs. Jewett died, but George, the disclaimant, then waited 33 years to disclaim. Here, petitioner promptly disclaimed within the 9-month period following her husband's death, as permitted by section 2518(b)(2)(A). The decedent's interest was, of course, found in the gross estate for estate tax purposes, and a tax-defective disclaimer by petitioner would have attracted an additional and immediate gift tax.

It is exactly this kind of result which I believe Congress intended to mitigate when it adopted section 2518 in 1976. See H. Rept. 94-1380, 1976-3 C.B. (Vol. 3) 738, 800-801. I can perceive of no policy reason for discriminating against disclaimers of joint interests includable in the gross estate vis-a-vis other types of interests, e.g., tenancies-in-common, general powers of appointment, etc. I would therefore hold for petitioners.

---

[1] See *United States v. Jacobs*, 306 U.S. 363, 371 (1939):

"Until the death of her co-tenant, the wife could have severed the joint tenancy and thus have escaped the application of the estate tax of which she complains. Upon the death of her co-tenant she for the first time became possessed of the sole right to sell the entire property without risk of loss which might have resulted from partition or separate sale of her interest while decedent lived. * * * "

CLAPP, JACOBS, and WELLS, *JJ.*, agree with this dissent.

---

PARR, *J.*, dissenting: I agree with the dissent by Judge Nims, except for his discussion of tenancies by the entirety.

First, we are not required to reach this issue, since estates by the entirety have never been separately recognized in North Dakota. *Renz v. Renz*, 256 N.W.2d 883, 884-885 (N.D. 1977); cf. N.D. Cent. Code sec. 47-02-06 (1986 rev.) (defining joint interests to include co-ownership with survivorship rights).

Second, a divorce or annulment generally terminates the tenancy by the entirety and transforms it into a tenancy-in-common, with each spouse holding an undivided one-half interest. 4A R. Powell, Law of Real Property, par. 624[3] (1986). Since a tenancy by the entirety is therefore revocable by the parties, I disagree with Judge Nims' distinction on these grounds between tenancies by the entirety and joint tenancies, and would apply the same rules to both forms of ownership.

PARKER, *J.*, agrees with this dissent.