ESTATE OF JOSEPHINE O'MEARA DANCY, DECEASED, JOHN J. PECK, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11774-85.          Filed September 14, 1987.

---

[21]See also *Blake v. Commissioner*, T.C. Memo. 1981-579, affd. without discussion of this point 697 F.2d 473 (2d Cir. 1982).

*Newman A. Townsend, Jr.*, and *Maria M. Lynch*, for the petitioner.
*Edwina L. Charlemagne*, for the respondent.

KÖRNER, *Judge*: Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $70,173.22. After concessions by both sides, the issue which we must decide is whether petitioner's executor, on behalf of Josephine O'Meara Dancy, deceased, made a qualified disclaimer, for Federal estate tax purposes, with respect to certain undivided interests which decedent owned as joint tenant, with rights of survivorship, at the time of the death of her husband (who predeceased her) in certain stocks and bonds, certificates of deposit, and a money market fund.

## FINDINGS OF FACT

Petitioner herein, the Estate of Josephine O'Meara Dancy, acting by and through John J. Peck, executor, was a resident of Jacksonville, North Carolina, at the time the petition herein was filed. Petitioner's decedent, Josephine O'Meara Dancy (hereinafter decedent), died testate on August 22, 1982. Her last will and testament was duly probated in the North Carolina State Courts. Decedent's will left all her property to her husband, John Spencer Dancy, if he survived her. If he predeceased her, decedent's will then left $10,000 in trust for one individual and the balance to her nephew, John J. Peck (the executor herein).

In fact, decedent's husband, John Spencer Dancy (hereinafter Dancy), predeceased decedent, dying on August 14, 1982. His will was likewise probated in the North Carolina Courts. Under his will, Dancy left all his property to his wife, decedent herein, if she survived him, and otherwise left $20,000 for two individuals and the remainder to the same John J. Peck.

At the time of Dancy's death, he and decedent owned various stocks and bonds as equal joint tenants with rights of survivorship. Those securities, together with their dates of acquisition and their fair market values at the time of decedent's death, are as follows:

| Item | Date purchased or issued | Fair market value at time of decedent's death |
|---|---|---|
| 1. 400 Shares of Reliance Insurance Co., $2.68 cumulative preferred series A | 09/02/76 | $3,650.00 |
| 2. $3,000 Carolina Tel & Tel convertible sub. debenture 5.75% due 1/15/88 | ([1]) | 2,287.00 |
| 3. $3,200 AT&T unredeemed 8¾% due 5/15/2000 | 11/25/77 | 2,311.00 |
| 4. 200 Shares Interstate Power Co. $2.28 preferred stock | ([1]) | 3,300.00 |
| 5. 300 Shares VEPCO | ([1]) | 4,284.38 |
| 6. 8 Shares Chrysler Corp. | ([1]) | 65.00 |
| 7. 1,000 Shares Duke Power Co. | 04/02/79; 04/12/77; 05/09/78 | 22,718.75 |
| 8. 1,000 Shares CP&L | ([1]) | 22,187.50 |
| 9. 5,604 Shares Continental Telecom, Inc. | ([1]) | 92,466.00 |
| 10. 5,303 Shares United Telecommunications, Inc., $1.50 cumulative convertible preferred 2d series | ([1]) | 121,969.00 |
| 11. 50 Shares AT&T, $4 convertible preferred | Prior to 01/01/77 | 2,951.56 |
| 12. 706 Shares AT&T | Prior to 01/01/77, with exception of 138 shares on 11/17/77 | 39,933.13 |
| 13. 54.641 Shares Duke Power Co. under dividend-reinvestment program | ([1]) | 1,241.38 |

[1]Not disclosed in this record.

No stocks and bonds were acquired by decedent and her spouse during the 9-month period preceding the February 2, 1983, filing of the statement of renunciation.

At the time of Dancy's death, he and decedent also owned, as equal joint tenants with rights of survivorship, certain certificates of deposit. A description of those certificates of deposit, together with the dates when issued and the fair market value of each at the time of decedent's death, is as follows:

| Item | Date issued | Fair market value at time of decedent's death |
|---|---|---|
| 1. Certificate of deposit No. 25082 - Peoples Bank & Trust Co., original principal amount of $10,000 | 10/11/76 | $13,565.44 |
| 2. Certificate of deposit No. 1864 - Home Federal Savings & Loan Association , Dunn, N.C., original principal amount of $45,000 | 11/04/81 | 45,000.00 |
| 3. Certificate of deposit No. 655033454 - Home Federal Savings & Loan Association , Charlotte, N.C., original principal amount of $10,000 | 02/04/82 | 10,594.00 |
| 4. Certificate of Deposit No. 655022713 - Home Federal Savings & Loan Association, Charlotte, N.C., original principal amount of $17,192.85 | 01/05/82 | 18,407.18 |

| Item | Date issued | Fair market value at time of decedent's death |
|---|---|---|
| 5. Certificate of Deposit No. 655042166 - Home Federal Savings & Loan Association, Charlotte, N.C., original principal amount of $10,000 | 03/05/82 | $10,466.08 |

At the time of Dancy's death, decedent, Dancy and John J. Peck, as equal joint tenants with rights of survivorship, owned an account with the Vanguard Money Market Trust, which had a balance of $5,404.39 at the date of decedent's death. All contributions by John J. Peck to this account came from gifts made by decedent and Dancy to him. The date this account was created is not disclosed in this record.

On February 2, 1983, John J. Peck, as decedent's executor and on her behalf, executed and filed in Dancy's probate proceedings a notarized "Statement of Renunciation." In that document, inter alia, Mr. Peck undertook to renounce decedent's right to succeed, as surviving joint tenant, to the interests in the property described above which had been Dancy's at the time of his death. After describing the various properties to be covered by the renunciation, including the property interests in issue here, the "Statement of Renunciation" made the following declarations:

IX.

That the undersigned does hereby declare her intent to renounce in whole the said property or interest in said property, as described above, which she would otherwise receive from the Estate of John Spencer Dancy.

X.

That this Statement of Renunciation is filed within the time provided by statute.

XI.

That the undersigned has not taken or done, nor contracted to take or do, any act which would waive or bar her right of renunciation.

XII.

That a copy of this Statement of Renunciation has been delivered in person to the personal representative or other fiduciary of the decedent, John Spencer Dancy.

In decedent's Federal estate tax return, as amended, one-half of the claimed value of the stocks, bonds, and certificates of deposit owned by decedent and Dancy as joint tenants with rights of survivorship was included in decedent's gross estate. As to the Vanguard Money Market Trust account, the amended return reported one-third of the date-of-death balance in decedent's gross estate.

In his notice of deficiency, inter alia, respondent determined that the full fair market value of the property owned by decedent and her spouse as joint tenants with right of survivorship was includable in decedent's gross estate. Likewise, with respect to the Vanguard Money Market Trust account, respondent determined that the full amount of funds contained therein at the date of decedent's death was includable in her gross estate.[1]

## OPINION

In this case, we are called upon to determine the validity, for Federal estate tax purposes, of certain disclaimers or renunciations which decedent's executor made on behalf of his decedent in 1983, with respect to the joint and survivorship interests which decedent had, at the time of Dancy's death in 1982, in certain stocks, bonds, certificates of deposit, and a money market account. Because of Federal statutory and regulatory changes which took place during the relevant periods of time, we must examine the legal requirements for several different periods separately.

Prior to 1977, and the enactment of what is now section 2046,[2] the validity of disclaimers for estate tax purposes was determined under the provisions of section 2056(d) and/or section 2511, as appropriate. *Estate of Halbach v. Commissioner*, 71 T.C. 141 (1978); see *Estate of Caswell v. Commissioner*, 62 T.C. 51, 55-56 (1974). After 1976, pursuant to the provisions of what was originally section 2045 and now is section 2046, such disclaimers are governed by the provisions of section 2518.

---

[1]The parties are in agreement as to the fair market values of the 100 percent interest in each of these assets, as described hereinabove in our findings of fact.

[2]All statutory references are to the Internal Revenue Code of 1954, as in effect at the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.

Where a joint tenancy is created before January 1, 1977, a disclaimer or renunciation of such interest must be made in accordance with local law. *Keinath v. Commissioner*, 58 T.C. 352 (1972), revd. on other grounds 480 F.2d 57 (8th Cir. 1973); see *Griswold v. Commissioner*, 81 T.C. 141, 149, 154 (1983), affd. without published opinion 812 F.2d 712 (2d Cir. 1987); see *Cottrell v. Commissioner*, 72 T.C. 489 (1979), revd. on other grounds 628 F.2d 1127 (8th Cir. 1980); sec. 25.2511-1(c)(2), Gift Tax Regs.

Where the joint tenancy is created after December 31, 1976, and before January 1, 1982, the requirements of section 2518 apply, but this still includes the requirement that the disclaimer be valid under local law. Sec. 25.2518-1(c)(1), Gift Tax Regs.

Where the joint tenancy is created after 1981, however, section 2518(c)(3) permits the requirements of State law as to disclaimers to be avoided, to the extent therein provided.[3]

In this case, respondent on brief has conceded that the joint interests in the certificates of deposit created after December 31, 1981, described as items 3, 4, and 5 in our findings of fact, were validly disclaimed by decedent, to the extent of her survivorship rights in Dancy's one-half share. There being no further issue with respect to these items, they are removed from our consideration. There remain in issue the certificates of deposits Nos. 1 and 2, and the joint money market account, as well as the stocks and bonds. We turn our attention first to the question of the validity of the claimed renunciation of decedent's survivorship interest in these assets under State law.

The general rule with regard to the manner in which property interests may be transferred has been stated as follows:

In respect to the legal methods of disposition, all property is distributed by law under the head either of real or personal; and in order to be effectual, the act of disposition must conform to the mode appropriate to the kind of property. What method shall be sufficient to transfer property is a matter of positive regulation by law; it is not in the power of parties to waive or alter, by their private agreement, any regulations which have been adopted with regard not only to the interests of the

[3] Sec. 2518(c)(3) was added to the Code by Pub. L. 97-34, 95 Stat. 318, sec. 426(a), effective for transfers creating an interest in the person disclaiming made after Dec. 31, 1981.

parties immediately concerned, but also with regard to the interest of others in ascertaining the ownership of property. * * * [4]

In 1784, in an apparent access of Revolutionary republican sentiment, North Carolina abolished the right of survivorship in joint tenancies, whether in real or personal property, and in effect converted such estates into tenancies in common. The general prohibition persists to this day, and now appears as section 41-2 of the General Statutes of North Carolina (1984 rev.) (hereinafter GS). In recent years, however, there has been some relaxation. In 1959, the legislature authorized the creation of joint accounts by two or more persons with banks, with rights of survivorship, under the specific conditions laid down in the statute. GS 41-2.1. Still later, in 1967, the legislature authorized the creation of joint tenancy with right of survivorship between husband and wife in corporate stock and securities under specific conditions. GS 41-2.2. The parties herein have stipulated that the assets in issue before us were held in joint tenancy with rights of survivorship, and no issue is presented to us regarding the proper compliance with the applicable statutes. We therefore accept that such survivorship rights in the assets here in issue existed at date of Dancy's death, and that decedent, as the survivor, succeeded to Dancy's interests as joint tenant therein.

Under common law, a person did not have the power to renounce or disclaim property acquired by operation of law, e.g., by intestacy. *Perkins v. Isley*, 224 N.C. 793, 32 S.E.2d 588 (1945). Such right may only be acquired by statute. *Estate of Glenn*, 258 N.C. 351, 128 S.E.2d 408 (1962) (semble).

On the other hand, the right to renounce or disclaim a devise or bequest is generally recognized. *Perkins v. Isley*, *supra*; *Reese v. Carson*, 3 N.C. App. 99, 164 S.E.2d 99 (1968). No enabling statute for this purpose is generally required. *Perkins v. Isley*, *supra*.

The right of survivorship may be fairly likened to a contingent remainder or a vested remainder subject to divesting upon condition subsequent. *Jewett v. Commissioner*, 455 U.S. 305, 309 n. 5 (1982); *McDonald v. Commissioner*, 89 T.C. 293 (1987); *Griswold v. Commissioner*, *supra*

---

[4]63A Am. Jur. 2d, sec. 47 (1984), with fn. refs. omitted.

at 148 n. 8. Perhaps more precisely, and by analogy to real property law, which appears to be equally applicable to personal property in the present situation, joint ownership with right of survivorship may be described as a fee simple determinable, at least in North Carolina. See J. Webster, Real Estate Law in North Carolina, sec. 35, 36, 109 (1981 rev.). As such, it is a recognizable property interest (see *Commissioner v. Procter*, 142 F.2d 824, 827 (4th Cir. 1944)), created at the time the joint tenancy was created, by an inter vivos transfer (in this case), and the effect of the disclaimer, if valid, would be that the property interest would pass to someone else. Thus the disclaimer in this case would be with respect to a property interest which decedent was entitled to receive by operation of law—by satisfying the condition that she survive Dancy, which she did.[5]

We must determine whether such disclaimer was valid under North Carolina law. There appear to be no decisions of the North Carolina courts with respect to this matter. In this situation, we must determine, as best we can, what the highest court of North Carolina would hold on the question of State law which is presented. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967). In light of the general common law rule, which we believe North Carolina has accepted, that one does not have the power to renounce or disclaim property acquired by operation of law (absent some law to the contrary) (*Perkins v. Isley, supra*; *Estate of Glenn, supra*), we examine the statutory framework.

There are three separate "Uniform Laws" in the area of renunciation and disclaimer which have been drafted by the National Conference of Commissioners on Uniform State Laws and recommended for adoption in all States. The first of these, the Uniform Disclaimer of Transfers by Will, Intestacy or Appointments Act, has, as of 1987, been adopted by nine States including North Carolina, and its provisions now appear, with variations enacted by North Carolina but not relevant herein, as Chapter 31B of the General Statutes of North Carolina. GS 31B-1 provides as follows:

---

[5]In *Kennedy v. Commissioner*, 804 F.2d 1332 (7th Cir. 1986), revg. T.C. Memo. 1986-3, the court took a different position, likening the right of survivorship to a power of appointment. We have recently indicated our disagreement with that case, *McDonald v. Commissioner*, 89 T.C. 293 (1987), and we adhere to that position here.

(a) A person who succeeds to a property interest as:

(1) Heir, or

(2) Next of kin, or

(3) Devisee, or

(4) Legatee, or

(5) Beneficiary of a life insurance policy who did not possess the incidents of ownership under the policy at the time of death of the insured, or

(6) Person succeeding to a renounced interest, or

(7) Beneficiary under a testamentary trust or under an inter vivos trust which takes under a will, or

(8) Appointee under a power of appointment exercised by a testamentary instrument, or

(9) The duly authorized or appointed guardian with the prior or subsequent approval by the clerk of superior court, or by the resident judge of the superior court of any of the above, or

(10) The personal representative appointed under Chapter 28A of any of the above,

or the attorney-in-fact of any of the above may renounce in whole or in part the right of succession to any property or interest therein, including a future interest, by filing a written instrument under the provisions of this Chapter. A renunciation may be of a fractional share or any limited interest or estate. Provided, however, there shall be no right of partial renunciation if the decedent or donee of the power expressly so provided in the instrument creating the interest.

(b) In no event shall the persons who succeed to the renounced interest receive from the renouncement a greater share than the renouncer would have received.

(c) The instrument shall (i) describe the property or interest renounced, (ii) declare the renunciation and extent thereof, (iii) be signed and acknowledged by the person authorized to renounce. (1975, c. 371, s. 1; 1983, c. 66, s. 1.)

The second of these uniform laws is the Uniform Disclaimer of Transfers Under Nontestamentary Instruments Act.[6] The provisions of this act, inter alia, would specifically authorize a "surviving joint tenant * * * [to] disclaim in whole or in part the right of transfer to him of any property or interest therein by delivering a written disclaimer under this act. A disclaimer may be of a fractional share or of any limited interest or estate. (Uniform Act, sec. 1.). This act speaks directly to the fact situation presented in the instant case. By 1987, it had been adopted in principal part by six states, not including North Carolina.

---

[6]See 8A Uniform Laws Annotated 111, et seq. (1983)

The third "Uniform Law" in our area of interest is the Uniform Disclaimer of Property Interests Act.[7] Its operative provisions effectively combine the provisions of the other two uniform acts mentioned above, so as to authorize disclaimers of property interests by whatever means acquired. By 1987, six states had adopted this act, with minor variations, but North Carolina was not among them.

As can be seen from examining the North Carolina statute quoted above, it is clear that neither decedent, nor John J. Peck as her personal representative, falls within any of the categories of persons who may execute a valid disclaimer or renunciation of a property interest acquired as described therein. Decedent was the successor in interest by right of survivorship to a property interest which was created inter vivos by herself and Dancy, and this falls outside the ambit of GS 31B-1.

GS 31B-5 indeed does provide as follows:

This Chapter does not abridge the right of a person to waive, release, disclaim or renounce property or an interest therein under any other statute or as otherwise provided by law.

The difficulty is that we can find no other North Carolina statute which would authorize the disclaimer which is at issue herein, and we cannot extend the scope of the existing statute beyond its plain terms. If either the Uniform Disclaimer of Transfers Under Nontestamentary Instruments Act, or the Uniform Disclaimer of Property Interests Act (and particularly the former), or any comparable statute had been enacted by the North Carolina legislature, it would be a different story, but North Carolina has not seen fit to do so. Nor have we been able to find any North Carolina case authority which would support the validity of the disclaimer in this case.

Petitioner argues that the necessary North Carolina case authority is provided by the case of *Sedberry v. Johnson*, 62 N.C. App. 425, 302 S.E.2d 924 (1983), but we think this reliance is misplaced. In that case, a husband had executed a will devising and bequeathing all his property to his wife. At some point thereafter, the spouses entered into a separation agreement in which each waived and renounced

---

[7]8A Uniform Laws, *supra* at 85 et seq.

"all rights * * * under any previously executed will of the other." At a later date, the husband died without having revoked or modified his will. Under these facts, the North Carolina Court of Appeals held that the wife had validly renounced her interests under the husband's will (even though it was then only an expectancy) because (a) the interest renounced was one which would have passed by will, and therefore was within the scope of GS 31B-1; (b) GS 31B-5 allowed other forms of disclaimer as provided by any other statute; and (c) the disclaimer in the instant case was, as part of a separation agreement, valid and binding under the provisions of GS 52-10.1 (dealing with separation agreements).

*Sedberry v. Johnson* therefore can give petitioner no comfort here. There is no other North Carolina statute which would authorize a disclaimer or renunciation of the property in issue here under our present facts, nor any case authority for the proposition, and we must accordingly conclude that the attempted renunciation by decedent's executor of the personal property interests involved here was not valid under North Carolina law, and that the Supreme Court of North Carolina, if faced with the question, would so hold. So far as the stocks and bonds in issue in this case are concerned, all acquired prior to 1982, so far as this record shows, this disposes of the matter in favor of respondent.

With respect to the money market fund and the remaining certificates of deposit not already conceded by respondent, however, a further matter needs to be addressed. With respect to these items, petitioner argues that since the two certificates of deposit and the money market account were not created until the time of Dancy's death on August 14, 1982, the provisions of section 2518(c)(3) apply, and that since the instant disclaimer qualifies under that section, it is valid for Federal estate tax purposes irrespective of its validity under State law.[8]

---

[8]The full text of sec. 2518 is as follows:

SEC. 2518. DISCLAIMERS.

(a) GENERAL RULE.—For the purposes of this subtitle, if a person makes a qualified disclaimer with respect to any interest in property, this subtitle shall apply with respect to such interest as if the interest had never been transferred to such person.

Petitioner's position is that (a) since, under North Carolina law, there was no completed transfer until the death of the first joint tenant (Dancy) on August 14, 1982, the joint interest was created only at that time; and (b) as a result, the instant disclaimer was valid, regardless of the provisions of State law, because it complied with the requirements of section 2518(c)(3).[9]

---

(b) QUALIFIED DISCLAIMER DEFINED.—For purposes of subsection (a), the term "qualified disclaimer" means an irrevocable and unqualified refusal by a person to accept an interest in property but only if—

    (1) such refusal is in writing,

    (2) such writing is received by the transferor of the interest, his legal representative, or the holder of the legal title to the property to which the interest relates not later than the date which is 9 months after the later of—

        (A) the date on which the transfer creating the interest in such person is made, or

        (B) the day on which such person attains age 21,

    (3) such person has not accepted the interest or any of its benefits, and

    (4) as a result of such refusal, the interest passes without any direction on the part of the person making the disclaimer and passes either—

        (A) to the spouse of the decedent, or

        (B) to a person other than the person making the disclaimer.

(c) OTHER RULES.—For purposes of subsection (a)—

    (1) DISCLAIMER OF UNDIVIDED PORTION OF INTEREST.—A disclaimer with respect to an undivided portion of an interest which meets the requirements of the preceding sentence shall be treated as a qualified disclaimer of such portion of the interest.

    (2) POWERS.—A power with respect to property shall be treated as an interest in such property.

    (3) CERTAIN TRANSFERS TREATED AS DISCLAIMERS.—A written transfer of the transferor's entire interest in the property—

        (A) which meets requirements similar to the requirements of paragraphs (2) and (3) of subsection (b), and

        (B) which is to a person or persons who would have received the property had the transferor made a qualified disclaimer (within the meaning of subsection (b)), shall be treated as a qualified disclaimer.

[9]The enactment of sec. 2518(c)(3) in 1981 (see note 4 *supra*) was apparently a further attempt by the Congress to create a disclaimer for estate and gift tax purposes which would not be subject to the varying requirements of State law—an attempt first made, unsuccessfully, in the Tax Reform Act of 1976. In the General Explanation of the Economic Recovery Tax Act of 1981 (Pub. L. 97-34), at 266-267 (Comm. Print 1981), prepared by the Staff of the Joint Comm. on Taxation of the Congress, it was explained thus:

"When the Congress enacted section 2518 in the Tax Reform Act of 1976, it intended to create a uniform Federal standard so that a disclaimer could be effective for Federal estate and gift tax purposes whether or not valid under local law.

"Section 2518 required, among other conditions, that the disclaimer be effective under local law to pass title without direction on the part of the person making the disclaimer and that the property pass either to the decedent's spouse or to a person other than the person making the disclaimer. As a result, a disclaimer that is ineffective under local law could not be treated as a qualified disclaimer for purposes of Federal estate and gift taxes under prior law, even if the disclaimant timely transferred the property to the individual who, under local law, would have received the property if there had been an effective disclaimer. Because local disclaimer laws are not uniform, identical refusals to accept property could be treated differently for Federal estate and gift tax purposes, depending upon the applicable local law.

"Thus, contrary to the original Congressional intent, prior law did not provide uniform treatment of disclaimers under Federal estate and gift tax law. In order to provide uniform treatment among states, the Congress concluded that, if an individual timely transfers the

As to the first proposition, we agree with petitioner. Under North Carolina law, as we understand it, the mere creation of a joint account of this type with a banking institution does not constitute a completed transfer. Since either joint tenant may withdraw from the account at any time, the transfer is not complete until the first joint tenant dies. See GS 42-2.1(b)(1); *Myers v. Myers*, 68 N.C. App. 177, 314 S.E.2d 809 (1984). This means that decedent's interest in the two certificates of deposit and the money market account were not vested until the time of Dancy's death in 1982.

As to the second proposition, however, we think that petitioner must fail. Granted that the disclaimer herein met the requirements of section 2518(c)(3)(A), it nevertheless remains that section 2518(c)(3) requires "A written transfer of the transferor's entire interest in the property— * * * (B) which is to a person or persons who would have received the property had the transferor made a qualified disclaimer (within the meaning of subsection (b))."

The statute is explicit. To qualify under section 2518(c)(3), without regard to the requirements of local law, there must be *a written transfer from the disclaimant to a named* person who would have received the property if a legal disclaimer had been made. In this case, that did not happen. The "Statement of Renunciation" in this case, whose relevant provisions we have quoted in our findings of fact, undertook to disclaim decedent's survivorship interest, without purporting to make a transfer of such interest to John J. Peck (the residuary taker under Dancy's will) or to any other person. It simply disclaimed decedent's survivorship interest, without more. It accordingly did not satisfy the provisions of section 2518(c)(3), so as to avoid the requirement that it be a legal disclaimer under North Carolina law. Harsh though the result seems, we have no alternative but to apply the law as clearly written.[10] It thus results that

---

property to the person who would have received the property had the transferor made an effective disclaimer under local law, the transfer should be treated as an effective disclaimer for Federal estate and gift tax purposes provided the transferor has not accepted the interest or any of its benefits."

[10]The plain requirement of sec. 2518(c)(3), that there be a written transfer from the disclaimant to an identified person, is further clarified by the legislative history of this enactment. See General Explanation of the Economic Recovery Tax Act of 1981 (Pub. L.

there was no effective disclaimer herein as to certificates of deposit Nos. 1 and 2, nor as to the Vanguard Money Market account.

To give effect to the above,

*Decision will be entered under Rule 155.*

97-34), prepared by the Staff of the Joint Comm. on Taxation 267 (1981), at 267 (Comm. Print 1981).