# UNITED STATES *v.* JACOBS, EXECUTRIX.*

No. 391.  Argued February 2, 1939.—Decided February 27, 1939.

---

*Together with No. 482, *Dimock, Substituted Executor*, v. *Corwin*, Late Collector of Internal Revenue,* on writ of certiorari to the Circuit Court of Appeals for the Second Circuit.

*Mr. Norman D. Keller* argued the cause for the United States in No. 391 and respondent in No. 482. *Solicitor General Jackson, Assistant Attorney General Morris,* and *Mr. Sewall Key* were on the briefs for the United States in No. 391 and respondent in No. 482. *Messrs. Carlton Fox* and *A. F. Prescott* also were on the brief for the United States in No. 391. *Messrs. Norman D. Keller* and *Edward J. Ennis* also were on the brief for respondent in No. 482.

*Mr. Hugh W. McCulloch,* with whom *Messrs. Frank H. McCulloch, Lewis C. Murtaugh,* and *Ned P. Veatch* were on the brief, for respondent in No. 391.

*Mr. E. J. Dimock,* with whom *Messrs. C. O. Donahue* and *J. D. Rawlings* were on the brief, for petitioner in No. 482.

MR. JUSTICE BLACK delivered the opinion of the Court.

## No. 391.

The question is whether the entire value or only one-half the value of real property—purchased by a decedent with his own funds and held at his death by his wife and himself under a joint tenancy set up prior to 1916—may be included in the decedent's gross estate under the 1924 Revenue Act.

In 1909, real estate in Illinois was conveyed to W. Francis Jacobs, the decedent, and Elizabeth C. Jacobs, his wife, "as joint tenants" and this joint tenancy continued until decedent's death; the wife never contributed any part of, or consideration for, the joint property; decedent died June 17, 1924 (after the effective date of the 1924 Revenue Act), and as survivor the wife became sole owner in fee of the whole of the joint property.

The Commissioner included the full value of the property in decedent's gross estate for taxation under the 1924

Act. As executrix, respondent paid the tax, and sought recovery in the District Court which held that the estate tax could be imposed only upon one-half of the joint property's total value. The Circuit Court of Appeals affirmed.[1]

Respondent construes the 1924 Revenue Act as taxing—by its terms—only one-half the value of the joint property, and contends that inclusion of the property's entire value for estate tax purposes would as retrocative taxation violate the Due Process Clause of the Fifth Amendment.

*First.* It is clear that Congress intended, by § 302 of the 1924 Act,[2] to include in the gross estate of a decedent the full value at death of all property owned by him and any other in joint tenancy or by the entirety—irrespective of the date of the tenancy's creation—insofar as the property or consideration therefor is traceable to the decedent. Subdivision (h) of § 302 specifically provided that the provisions of § 302 relating to joint tenancies should "apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as . . . described

---

[1] 97 F. 2d 784.

[2] The 1924 Act imposed a tax (§ 301, Act of 1924, 43 Stat. 253, 303) "upon the transfer of the net estate of every decedent dying after" the Act's enactment, and included (§ 302) in each gross estate the value of "the interest . . . [in property] held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, . . . except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than a fair consideration in money or money's worth: *Provided,* That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such person from the decedent for less than a fair consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person . . ."

therein, whether made, created, arising, existing, exercised, or relinquished *before or after the enactment of this Act."* [Italics supplied.] Section 302 (h) was enacted in the 1924 Act after this Court, on May 1, 1922, had decided that the 1916 Act did not purport to impose an estate tax measured by the value of property held in joint tenancies created prior to the 1916 Act.[3] "The clear language of the 1924 statute repels the notion that it has no application to joint tenancies created prior to September 8, 1916." [4]

*Second.* Here, decedent paid the entire purchase price of the joint property with his own individual funds and, therefore, the 1924 statute required the inclusion of the full value of the joint property in his gross estate. Contending that the tax as so applied is retroactive, respondent insists that the Due Process Clause of the Fifth Amendment forbids such taxation. The reasoning is that a one-half interest in the joint property was transferred to, and vested in, the wife in 1909; that the tax in question only applies to transfers; and that the one-half interest transferred to the wife in 1909 could not thereafter (1924) be taxed as a part of decedent's gross estate without retroactively applying the tax to the 1909 transfer.

But the tax was not levied on the 1909 transfer and was not retroactive. At decedent's death in 1924, ownership and beneficial rights in the property which had

---

[3] *Shwab* v. *Doyle*, 258 U. S. 529, 535; *Knox* v. *McElligott*, 258 U. S. 546, 549. Respondent relies upon language of the *Knox* case to support the contention that § 302 of the 1924 Act is retroactive in its effect on joint tenancies such as the one here. However, the actual judgment of the Court in that case went no further than to hold that the terms of the 1916 Act there considered did not require the inclusion—in gross estates—of the value of property held in joint tenancies created prior to the enactment of that particular law.

[4] *Gwinn* v. *Commissioner*, 287 U. S. 224, 226; cf., *Phillips* v. *Dime Trust & S. D. Co.*, 284 U. S. 160, 166.

existed in both tenants jointly changed into the single ownership of the survivor. This change in ownership, attributable to the special character of joint tenancies, was made the occasion for an excise, to be measured by the value of the property in which the change of ownership occurred. Had the tenancy not been created, this survivorship and change of ownership would not have taken place, but the tax does not operate retroactively merely because some of the facts or conditions upon which its application depends came into being prior to the enactment of the tax.[5]

Death duties or excises imposed upon the occasion of change in legal relationships to property brought about by death are ancient in origin.[6] Congress has the power to levy a tax upon the occasion of a joint tenant's acquiring the status of survivor at the death of a co-tenant. In holding that the full value of an estate by the entirety may constitutionally be included in a decedent's gross estate for estate tax purposes, this Court said: "The question . . . is, not whether there has been, in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights . . .

"At . . . [the co-tenant's] death, however, and because of it, . . . [the survivor] for the first time, became

---

[5] Cf., *Reynolds* v. *United States,* 292 U. S. 443, 449; *Cox* v. *Hart,* 260 U. S. 427, 435.

[6] See, *Knowlton* v. *Moore,* 178 U. S. 41, 47; 1 Cooley, "Taxation," § 48, (4th ed.); Seligman, "Essays in Taxation," Ch. V, (9th ed., 1921).

entitled to exclusive possession, use and enjoyment; she ceased to hold the property subject to qualifications imposed by the law relating to tenancy by the entirety, and became entitled to hold and enjoy it absolutely as her own; and then, and then only, she acquired the power, not theretofore possessed, of disposing of the property by an exercise of her sole will. Thus the death of one of the parties to the tenancy became the 'generating source' of important and definite accessions to the property rights of the other. These circumstances, together with the fact, the existence of which the statute requires, that no part of the property originally had belonged to the wife, are sufficient, in our opinion, to make valid the inclusion of the property in the gross estate which forms the primary base for the measurement of the tax." [7]

Thereafter, it was further decided that the full value of the property passing to a survivor under a tenancy by the entirety created prior to the estate tax of 1916 could be included in the gross estate.[8] Congress—it has been held—may also constitutionally apply an estate tax to the whole of a joint tenancy created after the 1916 Act,[9] and to half of a joint tenancy created prior to the 1916 Act, where the decedent alone had furnished consideration for the joint property.[10]

It is urged that these decisions do not support the tax here upon the full value of the joint property, because

---

[7] *Tyler* v. *United States*, 281 U. S. 497, 503, 504.

[8] *Third National Bank & Trust Co.* v. *White*, 45 F. 2d 911, affirmed 287 U. S. 577; *Helvering* v. *Bowers*, 303 U. S. 618.

[9] *Foster* v. *Commissioner*, 303 U. S. 618.

[10] *Gwinn* v. *Commissioner, supra; Griswold* v. *Helvering*, 290 U. S. 56, 58. In the *Griswold* case this Court said: "Whether this application of the statute gives it a retroactive effect is the sole question here involved; and with that we find no difficulty. Under the statute the death of decedent is the event in respect of which the tax is laid. It is the existence of the joint tenancy at that time, and not its creation at an earlier date, which furnishes the basis for the tax."

this tenancy was created prior to the estate tax law of 1916. Respondent relies upon differences in the nature of tenancies by the entirety and joint tenancies in order to remove the present case from the application of these prior adjudications. Since a joint tenant's interest in realty is severable and subject to sale, the argument is that upon the death of a co-tenant the survivor actually receives nothing more than the decedent's one-half interest and therefore no more can be subjected to a death duty. On the other hand, respondent explains the permissible taxation of the whole of a tenancy by the entirety by reference to the "amiable fiction" [11] of the common law, under which ownership of a husband and wife in tenancy by the entirety is deemed a single individual unity and each owns all and every part of the property so held. By virtue of this feudal fiction of complete ownership in each of two persons, the surviving tenant by the entirety is conceived to be the recipient of all the property upon the death of the co-tenant, and therefore—it is said—all the property can be taxed.

The constitutionality of an exercise of the taxing power of Congress is not to be determined by such shadowy and intricate distinctions of common law property concepts and ancient fictions.[12] The Constitution grants

---

[11] Cf., *Tyler* v. *United States, supra,* at 503.

[12] A joint tenancy in Illinois—where the property involved here is located—is described by that State's highest Court (as in the common law) as follows: "The properties of a joint estate are derived from its unity, which is fourfold: the unity of interest, the unity of title, the unity of time and the unity of possession; or, in other words, joint tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time and held by one and the same undivided possession." *Deslauriers* v. *Senesac,* 331 Ill. 437, 440; 163 N. E. 327. The "learning in the books merely shows that in case of a conveyance to husband and wife, there is a *fifth unity,* to wit: that of person . . ." *Topping* v. *Sadler,* V Jones (No. Car.) 357, 360. See note, 30 L. R. A. 305.

Congress the "Power To lay and collect Taxes, Duties, Imposts, and Excises, to pay the Debts and provide for the common Defence and general Welfare." No more essential or important power has been conferred upon the Congress and the presumption that an Act of Congress is valid applies with added force and weight to a levy of public revenue.[13]

In addition, there is sufficient substantial similarity between joint tenancies and tenancies by the entirety to have moved Congress to treat them alike for purposes of taxation. Practical necessities—and taxation is "eminently practical" [14]—may well have led Congress to group different types of joint ownership together for taxation rather than to afford different treatment to each varying shade of such ownership. A tenancy by the entirety "is essentially a joint tenancy, modified by the common law theory that husband and wife are one person." [15] Only a fiction stands between the two. Survivorship is the predominant and distinguishing feature of each. The "grand incident of joint estate is the doctrine of *survivorship*, ' by which, when two or more persons are seized of a joint estate, . . . the entire tenancy upon the decease of any of them remains to the survivors, and at length to the last survivor; and he shall be entitled to the whole estate, whatever it may be.' " [16]

While it is true that until the death of decedent here each joint tenant possessed the right to sever the joint tenancy, each was nevertheless subjected to the hazard of losing the complete estate to the other as survivor. Prior to decedent's death, his wife had no right to dispose of her interest by will, nor could it pass to her legal

---

[13] *Nicol* v. *Ames,* 173 U. S. 509, 515.

[14] *Id.,* 516.

[15] 1 Tiffany, "Real Property" (1920), § 194; see, Littleton's "Tenures," § 291 (Wambaugh, ed., 1903).

[16] Freeman, "Cotenancy and Partition," 2nd ed., § 12.

heirs. She might survive and thereby obtain a complete fee to the property with attendant rights of possession and disposition by will or otherwise. Until the death of her co-tenant, the wife could have severed the joint tenancy and thus have escaped the application of the estate tax of which she complains. Upon the death of her co-tenant she for the first time became possessed of the sole right to sell the entire property without risk of loss which might have resulted from partition or separate sale of her interest while decedent lived. There was—at his death— a distinct shifting of economic interest,[17] a decided change for the survivor's benefit. This termination of a joint tenancy marked by a change in the nature of ownership of property was designated by Congress as an appropriate occasion for the imposition of a tax. Neither the amount of the tax nor its application to the survivor's change of status and ownership, was in any manner dependent upon the date of the joint tenancy's creation, whether before, or after, 1916. It is immaterial that Congress chose to measure the amount of the tax by a percentage of the total value of the property, rather than by a part, or by a set sum for each such change. The wisdom both of the tax and of its measurement was for Congress to determine.

## No. 482.

No. 482 involves provisions of the 1926 Revenue Act (44 Stat. 9) substantially identical to those of the 1924 Act considered above. Here, also, a joint tenancy (in personal property) was created by man and wife prior to 1916. However, not all of the joint property was contributed by the decedent, but a portion was contributed to the tenancy by the wife who survived. This property

---

[17] Cf., *Chase National Bank* v. *United States*, 278 U. S. 327, 338; *Saltonstall* v. *Saltonstall*, 276 U. S. 260, 271.

which she transferred to the tenancy had in turn been previously given to her—without consideration—by decedent before the creation of the joint tenancy. At decedent's death in 1930, an estate tax was assessed and paid upon the full value of the joint property, including that part contributed by the survivor but ultimately traceable to the decedent.

The District Court held that the full value of the joint property was taxable,[18] and the Circuit Court of Appeals affirmed.[19]

The contention that the 1926 tax is unconstitutional under the Fifth Amendment because imposed upon the total value of the joint tenancy at decedent's death is without merit, for reasons stated in No. 391.

However, there is here the further argument that the courts below erred in construing the 1926 Act to require the inclusion in the gross estate of that part of the joint property (shares of stock) contributed to the joint tenancy by the survivor, but which had been paid for and given to her by decedent prior to the creation of the tenancy.

Although subdivision (h) of § 302 of the 1926 Act specifically required inclusion in the gross estate of the full value of the joint property at death in proportion to the decedent's contribution to the purchase price, petitioner relies upon that part of subdivision (e) which excepts "such part [of the joint property] . . . as may be shown to have originally belonged to . . . [the survivor] and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth." Petitioner insists that this exception should be read "except such parts thereof as may be shown to have originally belonged to [the sur-

---

[18] 19 F. Supp. 56.
[19] 99 F. 2d 799.

vivor] and never *after the passage of this Act* to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth."

The surviving joint tenant in this case comes squarely within the governing statutory provision because she "received" and "acquired" all of the property contributed by her to the joint tenancy "from the decedent for less than an adequate and full consideration in money or money's worth." This language adopted by Congress clearly and unambiguously indicates the purpose to tax the entire value of a joint tenancy under circumstances shown by this record. We are without authority to add language to the statute directly contrary to such a clearly expressed purpose.

The judgment in No. 391 is reversed and that in No. 482 is affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of these cases.

MR. JUSTICE McREYNOLDS, MR. JUSTICE BUTLER, and MR. JUSTICE ROBERTS think that the judgment in No. 391 should be affirmed and that in No. 482 should be reversed.

It has long been the settled doctrine of this court that Congress cannot retroactively tax, as testamentary, a transfer consummated in accordance with existing law before the adoption of a system of estate taxation, and where the parties, at the time of the transaction, had no notice of intent to tax it as a transfer in contemplation of death or to take effect in possession or enjoyment at or after death.[1] In order to avoid holding taxing acts

---

[1] *Nichols* v. *Coolidge,* 274 U. S. 531; *Helvering* v. *Helmholtz,* 296 U. S. 93, 97; *White* v. *Poor,* 296 U. S. 98, 102.

unconstitutional on this ground, the court has often construed them as applying prospectively only.[2] Reliance is placed by the Government on decisions sustaining inclusion in the estate of one spouse of the entire value of an estate by the entireties. In the earlier cases wherein the exaction was upheld the act operated prospectively and affected only such an estate arising after passage of the statute,[3] or the estate came into being after the adoption of a system of taxation which might well include such a transfer within its scope.[4] Subsequently the inclusion of the entire value in the taxable estate of one spouse was sustained where the tenancy by the entireties antedated the passage of the estate tax acts.[5] The decision was based upon the peculiar nature of a tenancy by the entireties as expounded in *Tyler* v. *United States*. A transfer tax measured by one-half the value of an estate in joint tenancy has been approved although the estate was created prior to the adoption of the system of estate taxes;[6] but the court has never passed upon the validity of such a tax measured by the value of the entire joint estate. There are marked differences between a tenancy by the entireties and a joint tenancy in respect of the power of one tenant to destroy the joint estate, to transfer or encumber his interest and otherwise obtain the fruits of it. In order to prevent evasion Congress may include the value of the entire estate in the gross estate as a measure of the tax where the estate originates after

---

[2] *Shwab* v. *Doyle*, 258 U. S. 529; *Knox* v. *McElligott*, 258 U. S. 546; *Union Trust Co.* v. *Wardell*, 258 U. S. 537; *Levy* v. *Wardell*, 258 U. S. 542; *Lewellyn* v. *Frick*, 268 U. S. 238.

[3] *Tyler* v. *United States*, 281 U. S. 497.

[4] *Phillips* v. *Dime Trust & Safe Deposit Co.*, 284 U. S. 160.

[5] *Third National Bank & Trust Co.* v. *White*, 287 U. S. 577; *Helvering* v. *Bowers*, 303 U. S. 618.

[6] *Knox* v. *McElligott, supra*; *Gwinn* v. *Commissioner*, 287 U. S. 224; *Cahn* v. *United States*, 297 U. S. 691.

adoption of the law.[7]  But it may not retroactively apply such measure to an estate created at a time when its creators had no reason to expect that such a tax would be laid in view of the settled rules of property.

---

[7] See *Nichols* v. *Coolidge, supra,* p. 542; *Tyler* v. *United States, supra,* p. 505; *Helvering* v. *City Bank Co.,* 296 U. S. 85, 90.