Estate of William Everett Thompson, Deceased, Robbie M. Thompson, Executrix, v. Commissioner.
Estate of William Everett Thompson v. Commissioner
Docket No. 13201.
United States Tax Court
1948 Tax Ct. Memo LEXIS 233; 7 T.C.M. (CCH) 142; T.C.M. (RIA) 48035; March 17, 1948
J. M. Wells, Esq., 501 Masonic Temple, Greenville, S.C., for the petitioner. Newman A. Townsend, Jr., Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency of $3,381.93 in the estate tax of William Everett Thompson, deceased, in part by including in gross estate the full value of a bank account carried in decedent's name and the full value of a furnished home held in the name of decedent and wife as an estate by the entirety. Petitioner contends that only one-half of the value of the bank account and home should be included in gross estate as his wife owned and paid adequate consideration for the other half. Findings of Fact Robbie M. Thompson, a *234 resident of Greenville, S.C., is the widow of William Everett Thompson, deceased, and the executrix of his estate, petitioner herein. As executrix she filed an estate tax return on December 27, 1943, with the collector of internal revenue for the district of South Carolina. Thompson died, a resident of Fort Myers, Florida, on April 25, 1943. By will he devised and bequeathed all his property to his wife. At the time of his death there was a credit balance of $3,394.56 in a checking account carried in his name with the South Carolina National Bank, Greenville, S.C., and he and his wife were occupying a furnished residence at Fort Myers, recorded in their joint names, as husband and wife. The value of this property and its furnishings was $18,000. The decedent and Robbie M. Thompson were married at Greenville, S.C., on July 11, 1917. He was then employed by a retail grocer, and she was working as secretary for a stock brokerage firm; each earned $75 a month and neither had other property or income. Throughout their married life decedent maintained in his individual name a bank account with the South Carolina National Bank of Greenville in which he deposited his salary and against which *235 he alone was authorized to draw checks. His wife retained from her salary money which she required for spending and every month turned over the larger part of it to him for deposit in the account. Household bills were paid by decedent's checks against the account, and over the years decedent used it in the purchase and sale of securities. An inheritance of about $500 received by the wife in 1927 was deposited in it. Decedent was employed by a manufacturing company in 1922 and in 1925 became assistant manager of the Coca Cola Bottling Works at Greenville, a position which he held until February 1942. His wife remained steadily employed by the brokerage firm until September 1, 1941. Each received occasional increases in salary. In 1919 decedent purchased for $1,600 a vacant lot in Greenville, and erected on it a home which he and his wife occupied from 1921 until they left Greenville in 1942. In acquiring and improving this property decedent used funds drawn from the account, and on November 20, 1922, conveyed title to it to his wife; she paid no consideration, but assumed liability for a $3,000 debt secured by a mortgage on the property. The debt was discharged with funds drawn from *236 the account and the mortgage was released in 1926. Early in 1942 decedent accepted a position as assistant manager of a Coca Cola Bottling Works at Fort Myers, Florida. His wife sold the Greenville home and furnishings for $9,588.02, which she deposited in the account, and both moved to Fort Myers in April 1942. On April 15, 1943, they purchased a furnished home theref or $18,000 paid by a check of $2,000 dated February 9, 1943, and a check of $16,000 dated April, 15, 1943, both drawn by decedent against the Greenville bank account. The seller conveyed title to William E. Thompson and Robbie M. Thompson, husband and wife, "as tenants by the entireties." On April 15, 1943, decedent increased the credit balance of $1,203.10 in the Greenville bank account by a deposit of $4,000 transferred from his personal account with a Florida bank and by the proceeds of a loan of $14,500 for which he gave his individual notes for $5,000, $5,000 and $4,500 to the Greenville bank. He also borrowed $1,000 from the bank evidenced by his note dated March 24, 1943. His wife did not sign these notes. From the time of marriage until death decedent's earnings aggregated $88,017.80; from the time of marriage *237 until she ceased work in 1941, his wife's earnings aggregated $37,135.15. Over the years decedent made numerous deposits in and withdrawals from the Greenville bank account, and made numerous loans from the bank. The credit balance of the account fluctuated greatly and on March 23, 1943, was only $25. When he and his wife moved to Fort Myers on February 21, 1942, the balance was $1,495.39. Between that date and April 15, 1943, deposits increased aggregate credits to $104,275.96 and aggregate withdrawals of $100,881.50 during the same period resulted in a credit balance of $3,394.46, which remained at the date of decedent's death. At that time decedent owned stocks in various corporations reported on the estate tax return at an aggregate value of $50,286.75, and life insurance policies, payable to his estate or to his wife, having a reported value of $52,262. His wife owned bank stock worth about $6,600. Decedent's wife furnished one-half of the consideration paid for the Fort Myers home. In determining estate tax, the Commissioner included in the value of decedent's gross estate the $3,394.46 credit balance in the Greenville bank account and $18,000 representing the value of his *238 interest in the home at Fort Myers. Opinion Having included the full value of the bank account and of the Fort Myers residence in decedent's gross estate, respondent defends his determination by the argument that the bank account was always in decedent's name; that funds from it were used to pay for the residence, and while the wife contributed unspecified amounts over the years for deposit in the account, no total can be shown, and indeed no part of the accumulations can be deemed as used in the home purchase since the account's balance fluctuated greatly and on March 23, 1943, was only $25. By section 811, Internal Revenue Code, the value of gross estate shall be determined by including the value at death of all property except real estate situated outside the United States: (a) Decedent's Interest. - To the extent of the interest therein of the decedent at the time of his death; * * * * *
(e) Joint Interests. - To the extent of the interest therein held * * * as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except *239 such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: * * *. Decedent's wife testified vaguely that decedent and she agreed to "pool their assets;" to "live on one salary and save the other" when they were married, and they understood that the bank account was jointly owned. She testified further that while the account was in her husband's name, she had "signed a card" and could draw checks, but never did. We have made no finding that the account was joint, however, as the parties stipulated that "W. E. Thompson was the only person authorized to write checks," and consistent practice over *240 the years affirmatively indicates that he exercised control as sole owner. And as we can not find that funds carried were in the spouses' joint names and payable to either, there is no occasion to consider for this purpose what part of the account belonged originally to the wife. Accordingly, we approve the Commissioner's inclusion of the full credit balance in decedent's gross estate. In a second assignment petitioner charges error in the determination that the full value of the Fort Myers home and furnishings ($18,000) was included in gross estate, alleging that "the claimed one-half interest" of the wife was acquired with an accumulation of her separate funds. As this property was held by the entirety, section 811 (e) excepts from decedent's gross estate any part which originally belonged to the wife or was acquired for consideration furnished by her. Respondent contends that no part was, stressing that the price of $18,000 was paid by decedent's checks against the bank account in which the wife had no legal interest; that the account had a meager balance before the purchase, and nearly all of the funds used to meet the checks were provided by loans from the bank evidenced by *241 notes which only decedent signed. Respondent's argument is well supported by the actual mechanics of payment but not by the practical tests which have been sanctioned for the determination of similar issues. See Dimock v. Corwin, 306 U.S. 363. While the evidence does not show the total or percentage of deposits made with the wife's earnings, we have no doubt that they were substantial and that the commingled funds were used by the husband in the acquisition of stocks and other property held in his name. The aggregate value of his security portfolio given on the estate tax return is over $50,000 while the only property in the wife's name is bank stock of a value of $6,600. Under such circumstances we should be reluctant to find that the wife had furnished no part of the consideration for property held in the spouses' joint names even if no amount could be computed with precision. Cf. Cohan v. Commissioner (C.C.A., 2nd Cir.), 39 Fed. (2d) 540; Benjamin Abraham, 9 T.C. 222; Maurice P. O'Meara, 8 T.C. 622. But in fact it is established that upon sale of the Greenville home the wife received and deposited in the account $9,588.02 *242 in 1942. Respondent suggests that as the husband first acquired the Greenville home with account funds and conveyed it to the wife in 1922, she paid no adequate and full consideration because she did not own the account. By this contention he places himself in the position of imputing to the husband ownership of the wife's deposits in the account because they were held in his name while denying that account funds used to buy property held in the wife's name were furnished by her. As the wife held separately only this home and the bank stock worth $6,600 while the husband held separately over $50,000 in securities alone, we feel justified in regarding the two items of property in her name as evidence of a minimum of her contributions to deposits. And while the husband's use of the account between the wife's deposit of the $9,588.02 in 1942 and the joint purchase of the Fort Myers home early in 1943 caused the credit balance to vary, we are not concerned with the tracing of specific dollars in deciding this issue but with ascertaining from the full picture of events disclosed by the evidence whether or not the wife furnished half the consideration for the Fort Myers home, as claimed. *243 We believe and have found that she did. The Greenville home was hers. While not perfectly proved, it is plausible and credible that its undisclosed cost was not more than her contributions to the account even if reduced by the $6,600 in bank stock. Pursuant to custom she deposited the sale proceeds of the Greenville home in the account, and less than a year later petitioner paid for the Fort Myers home by checks against the account. Her contribution covered half the cost of the new home, and we hold that the Commissioner erred in including the half, for which she supplied the funds, in the value of decedent's gross estate. Cf. Richardson v. Helvering (D.C. App.), 80 Fed. (2d) 548. Decision will be entered under Rule 50.