Dear Mr. Wall:
You have requested an opinion of the Attorney General in your capacity as Chief Executive Officer of the Board of Trustees (Board) of the State Employees Group Benefits Program (Program), relative to a Medical Flexible Spending Account through the Section 125 Cafeteria Program (Cafeteria Plan). You state that Governor Foster established the State Employees Health Benefits Study Commission (Commission), pursuant to Executive Order No. MJF 2000-46. As part of its review of the Program, the Commission is considering the option of offering a Cafeteria Plan to state employees. You specifically ask whether the Board is authorized to administer such a Plan.
As you are aware, R.S. 42:871 creates the Board and vests therein the power and authority for the general administration of the Program. These powers and duties are set forth in R.S. 42:874 which provides, in pertinent part, the following:
 § 874. Powers and duties; board of trustees
 A. (1) The board shall have the powers and privileges of a corporation and shall exercise all powers, duties, functions and responsibilities provided or authorized for it by law. It shall directly exercise all powers, duties, functions and responsibilities provided or authorized for it which are in the nature of policymaking, rulemaking, licensing, regulation, enforcement, or adjudication and shall directly exercise all advisory powers, duties and functions provided to it by law.
 (2) The board shall administer and implement all programs provided or authorized for it by law which relate to rulemaking, licensing, regulation, enforcement and adjudication and shall be subject to the provisions of the Administrative Procedure Act, including provisions relative to adjudication proceedings.
 (3) The board shall exercise its powers, duties, functions and responsibilities and shall administer and implement the programs authorized in this Section
independently of the commissioner of administration, except as specifically provided in R.S. 42:875 and 875.1.
 B. In addition, the board shall have the following powers and duties:
 * * *
 (2) To adopt and promulgate rules and regulations for the administration, operation, and management of the board and to adopt and promulgate rules and regulations for the administration and operation of the State Employees Group Benefits Program, which shall not be inconsistent with the provisions of this Chapter or other applicable laws.
 * * *
 (6) To do and perform all things necessary and incident to the powers, duties, and functions vested in it.
 (7)(a) To negotiate contracts in the best interest of the State Employees Group Benefits Program and its covered persons, directly with health maintenance organizations and directly with a group purchaser a preferred provider organization or a provider or providers for formation of a preferred provider organization for the provision of basic health care services and other health care services to the program's covered persons, for any other health care plan or systems, including but not limited to any health care service, delivery system, benefits programs, insurance, or any other plan or programs that may be authorized by law.
 * * *
 (8) To administer or provide for the administration of an Internal Revenue Service qualified cafeteria plan. The plan shall be developed, negotiated and implemented by the board subject to approval of the appropriate standing committees of the legislature having jurisdiction over review of agency rules of the State Employees Group Benefits Program as designated by R.S. 49:968 (B)(15) or the subcommittee on oversight of such standing committees. The provisions of Chapter 16 of Subtitle III of Title 39 of the Louisiana Revised Statutes of 1950 shall not apply. (Emphasis added.)
As can be gleaned from the above, Section 874 grants the Board sweeping powers and authority for the administration and implementation of all programs and plans provided or authorized for it by law. This includes the power to (1) adopt, administer, operate or contract for all or a portion of the administration, operation or both, of a self-funded program for group life and accidental death and dismemberment insurance under R.S. 42:821; (2) adopt, administer, operate or contract for all or a portion of the administration, operation, or both of a self-funded program for group health, accident and hospital, surgical or medical expense benefits pursuant to R.S. 42:851; (3) negotiate contracts with health maintenance organizations, a group purchaser, and a preferred provider organization, for health care services, benefits programs or any other plan or programs authorized by law, under Section 874(B)(7)(a); and (4) administer or provide for the administration of a qualified Cafeteria Plan under Section 874(B)(8).
This office has, on several occasions, opined with regard to the implementation of a Cafeteria Plan. In Opinion No. 87-245, we concluded that the adoption of a Cafeteria Plan insurance program by a municipality was not violative of State law.
Opinion No. 94-542 discussed the implications of Article VII, Section 14(A) on a Cafeteria Plan being considered by the Louisiana State University System (System). Therein, we concluded that the System could offer a plan which would be implemented by a third-party administrator. Under this scenario, the administrator assumed liability for the spending accounts and/or the creation of a special fund derived from employee payments. These payments would be used in compliance with federal law that requires full reimbursement at any time in the plan year for any legitimate claim. The risk of covering any outstanding balance was assumed by the third-party administrator, not the State.
Opinion No. 93-280 discussed the options available to the State for utilization of unused or surplus employee medical expense pre-tax salary deductions which, by federal law, are deemed employer contributions which revert to the State. We opined that, as State funds, they could be used to cover the cost of the administration of the Cafeteria Plan, subject to the appropriation process. We further concluded that, while there is no prohibition under federal law, Article VII, Section 14(A) of the Louisiana Constitution of 1974 appeared to prohibit the funds from being used to cover medical expense reimbursements prior to those dollars being earned by the employee. You request that we revisit Opinion No. 93-280, in light of the exception found in Article VII, Section 14(B)(2) and the provisions of R.S. 42:874 and 875.1, discussed infra.
Article VII, Section 14(A) generally prohibits the loan, pledge or donation of the State's funds, credit or property. As stated in Opinion 94-542, Article VII, Section 14 is violated whenever the State seeks to give up something of value in the absence of a legal obligation to do so. Even in the presence of a legal obligation, the expenditure must be for a public purpose and create a public benefit proportionate to its costs. A public purpose and public benefit are presumed where the underlying legal obligation for the expenditure is created by the Constitution, a statute or an ordinance, City of Port Allen v. Louisiana RiskManagement, 439 So.2d 399 (La 1983).
Article VII, Section 14(B) provides, in pertinent part, the following:
 (B) Authorized Uses.
 Nothing in this section shall prevent (2) contributions of public funds to pension and insurance programs for the benefit of public employees;. (Emphasis added.)
One could argue that the Cafeteria Plan does not constitute an insurance plan or program. The Constitution does not define "insurance" as that term is used therein, nor does it specifically reference any of the plans and/or programs, or the statues authorizing same, discussed supra. However, R.S. 22:5(9)(a) defines "insurance" as follows:
 (9)(a) "Insurance" is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies. It shall include any trust, plan or agreement, popularly known as employee benefit trusts, not specifically exempted from state regulation under Public law 93-406, except collectively bargained union welfare plans, single employer plans or plans of the state of political subdivisions. (Emphasis added.)
As can be gleaned from the above, Section (9)(a) specifically excludes from the definition of insurance "plans of the state or political subdivisions". This obviously includes the plans offered under R.S. 42:821, 851, 874(B)(7)(a) and (B)(8). There are additional similarities shared among these plans and programs.
Under the state's health and hospital medical expense program (health and hospital program) there is no shifting of risk. In other words it is a self-funded plan whereby the employee and the State contribute into a fund for the payment of medical expenses. Likewise, there is no risk shifting under the Cafeteria Plan. The employee is simply paying pre-taxed dollars into a fund to pay unreimbursed medical expenses during the year.
Further, under both the state's health and hospital plan and the proposed Cafeteria Plan, the State would potentially be advancing dollars for medical expense reimbursements prior to those dollars being earned by employees. As previously noted, under the Cafeteria Plan, federal law requires full reimbursement at any time in the plan year for any legitimate claim. Thus, the potential exists for the State to advance public funds up to the maximum amount of the pre-taxed dollars authorized by the employee, prior to those dollars being earned by the employee. In the case of the health and hospital program, the participating employee may pay the initial premium for the first month, but incur and be reimbursed for medical expenses which far exceed that first premium payment.
R.S. 42:874(B)(8) clearly authorizes the Board to administer a qualified Cafeteria Plan. We believe this constitutes the underlying legal obligation establishing the presumption of a public purpose and benefit justifying the potential use of State (i.e., public) funds. We find further support for this legislative authorization in R.S. 42:875.1. It provides the following:
 § 875.1. Certification of funding; commissioner of administration
 No plan or plans of benefits adopted by the board in accordance with the provisions of this chapter or other applicable laws shall be implemented prior to certification by the commissioner of administration that appropriate funding is available for such plan or plans of benefits. (Emphasis added.)
Obviously, the Cafeteria Plan would constitute a "plan adopted by the board in accordance with the provisions of this Chapter or other applicable laws." We further believe that the certification as to appropriate funding clearly refers to both employee and public funds.
As noted earlier, Article VII, Section 14(B)(2) authorizes contributions of public funds to insurance programs for State employees. It does not specify or define which plans or programs qualify. The Legislature expressly included a board-administered Cafeteria Plan to be clearly within the powers and duties of the Board, subject to the approval of the appropriate legislative committees and certification by the Commissioner of Administration that appropriate funding is available. To exclude the Cafeteria Plan from the exception contained in Article VII, Section 14(B)(2), in effect, challenges its constitutionality. In this regard, we must be guided by the general rule that all statutes are presumed to be constitutional.
In Polk v. Edwards, 626 So.2d 1128 (La. 1993), the court stated:
 An elementary principle of statutory construction in constitutional law holds that all statutory enactments are presumed to be constitutional. Interstate Oil Pipe Line v. Guilbeau, 217 La. 160, 46 So.2d 113 (1950); State on behalf of J.A.V., 558 So.2d 214 (La. 1990). Unless the fundamental rights or privileges or immunities of a person are involved, a strong presumption exists that the legislature, in adopting legislation, has acted within its constitutional authority. Board of Directors of Louisiana Recovery Dist. v. All Taxpayers, Property Owners, etc., 529 So.2d 384 (La. 1988). This presumption is especially forceful in the case of statutes enacted to promote a public purpose. Id. at 387; See United States v. Jacobs, 306 U.S. 363, 369-70, 59 S.Ct. 551, 555, 83 L.Ed. 763, 768 (1939).
Clearly, R.S. 42:874(B)(8) was enacted to promote a public purpose and benefit. As noted in Attorney General Opinion No. 98-299, " benefits of the State Employees Group Benefits Program are by law to be construed to secure the maximum intended rights and benefits for the employee participating therein".
In summary, it is the opinion of this office that R.S. 42:874(B)(8) authorizes the Board to administer a medical flexible spending account through a qualified Cafeteria Plan, pursuant to Article VII, Section 14(B) and/or (C). The fact that State funds may potentially be used for medical expense reimbursements prior to those dollars being earned by the employee is not fatal to the Plan's implementation, but rather falls within the exception found in Article VII, Section 14(B). Since the Cafeteria Plan is authorized pursuant to a statute, it constitutes a legal obligation for a public purpose and benefit. As noted above, the Cafeteria Plan must be developed and implemented by the Board, subject to the approval of the appropriate legislative committees and certification by the Commissioner of Administration.
Further, we are unaware of any jurisprudence declaring Section 874(B)(8) to be unconstitutional. Accordingly, the constitutionality of this statute must be presumed, as applied in this opinion, absent jurisprudence to the contrary. Certainly, the Board, in its discretion, could seek a declaratory judgment affirming the validity of the proposed Cafeteria Plan.
To the extent the conclusions reached in prior Attorney General Opinion Nos. 96-175, 94-542 and 93-280 are inconsistent with the opinions expressed herein, they are hereby recalled. Needless to say, this opinion does not affect the validity of cafeteria plans implemented through a third-party administrator.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By: ____________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH,3/sfj