Dear Mr. Cedars:
You have requested an opinion of the Attorney General in your capacity as General Counsel for the St. Martin Parish School Board (Board). Therein, you ask for a reconsideration of Attorney General Opinion No. 00-291 which concludes that the Board is constitutionally prohibited from financial participation in an economic development endeavor with the St. Martin Parish Economic Development Authority (Authority). You have submitted additional information for our review which, along with your original request, may be summarized as follows.
On March 30, 1994, the Board, along with the City of Breaux Bridge, the City of St. Martinville, the Village of Parks and the St. Martin Parish Police Jury entered into an intergovernmental agreement pursuant to which they organized a nonprofit economic development corporation (i.e., the Authority). The Authority was created pursuant to R.S. 33:9020, et seq.
The Board formally certified as to the necessity for the Authority and, as reflected in the Authority's Articles of Incorporation, appointed two members to its Board of Directors. The Parish Superintendent of Schools is also an ex-office member of the Authority. Further, the Association's financial records are subject to audit by the Board. Since the Authority's creation, the Board, along with the other governmental entities enumerated hereinabove, have assisted in defraying its operating costs and expenses. The Board's annual participation has never exceeded $15,000.
You state that, as a direct result of the Boards participation, students have been given the opportunity to participate in various programs, affording training and employment with Association-recruited businesses and industries. More specifically, these businesses have participated in Adopt-a-School and Cooperative Office Education programs. One business enables students to participate in vo-technical studies at its facilities, for course credits, at no cost to the Board or the student
You specifically ask, based upon this additional information, whether the Board's participation in this endeavor is permissible under ArticleVII, Section 14 of the Louisiana Constitution of 1974.
As you are aware, the constitutional norm for the lawful expenditure of public funds and property is established in Article VII, Section 14. It provides, in pertinent part, the following:
 § 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property or things of value of the state or of any political subdivision, shall not be loaned, pledged or donated to or for any person, association or corporation, public or private.
 * * *
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
A very comprehensive analysis of the above Section, as it relates to the expenditure of public funds, was undertaken by this office in Attorney General Opinion No. 90-651. As noted therein, the constitutional test for the lawful use of public funds and property is found in Section 14. As quoted, above Paragraph (A) generally prohibits the loan, pledge or donation of public funds.
Paragraph (C) of Section 14 authorizes the State and its political subdivisions (i.e., the Board) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations and corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. In other words, the cooperative endeavor must meet the general standards for the non-gratuitous alienation of public funds established in Paragraph (A). City of Port Allen v.Louisiana Risk Management, et al., 439 So.2d 399 (La. 1983) and Attorney General Opinion Nos. 00-237, 97-471-A, 95-439, 95-141 and 90-651.
In City of Port Allen, the Supreme Court ruled:
 The cases that do exist [under La. Const. Art. IV § 12
(1921)] hold primarily that this section is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so . . .
 * * * 
 Section 14(C) does not help the state either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States Government, or public or private associations or corporations, or to individuals merely for a "public purpose." (Emphasis added.)
The threshold requirement of the constitutional doctrine for distinguishing between invalid and lawful expenditures and transfers of public funds and property is the presence of a legal obligation or duty by the transferor to alienate its funds or property. See Beard-Poulan,Inc. v. Dept. of Highways, 362 F. Supp. 547 (W.D.La. 1973) and Town ofBrusly v. West Baton Rouge Parish Police Jury, 283 So.2d 299 (La.App. 1st Cir. 1973).
This prerequisite is satisfied by the presence of a valid statute, ordinance, charter or contract. The vehicle by which the obligation is created may, nevertheless, be ultra vires or unconstitutional if it creates no binding legal obligation or if the obligation created is substantially inconsistent with, or beyond the scope of the Board's authorized duties. Attorney General Opinion Nos. 00-237, 97-471-A, 95-439, 95-141 and 90-651.
As noted above, the requirement of a legal duty is the threshold, but not the only predicate for the constitutionality of the expenditure. Second, the expenditure must also be for a public purpose. Finally, the expenditure must create a public benefit proportionate to the cost (i.e., the amount expended). Attorney General Opinion Nos. 00-237, 97-471-A, 95-439, 95-141 and 90-651.
As can be seen from the above, the unequivocal prohibition established by Article VII, Section 14 constitutes one of the most enduring and formally consistent constitutional provisions in Louisiana law. Further, it has been consistently recognized and upheld by this office. Attorney General Opinion Nos. 00-237, 97-471-A, 94-515, 93-787, 92-494 and 89-180.
The Board constitutes a political subdivision and body corporate of the State, exercising legislative functions on a parish-wide basis. Attorney General Opinion No. 89-130. Further, our Supreme Court has held that a parish school board constitutes a quasi-municipal corporation, and is governed by the rules applicable to strict municipalities. LouisianaAssociated General Contractors, Inc., et al. v. Calcasieu Parish SchoolBoard, 586 So.2d 1354 (La. 1991) rehearing denied. The general powers and duties of the Board are set forth in R.S. 17:51 and 81. They provide, in pertinent part, as follows:
 § 51. Parish boards as bodies corporate; power to sue and be sued service of citation
 There shall be a parish school board for each of the parishes, and these several parish school boards are constituted bodies corporate with powers to sue. The legislature hereby authorizes suits against any parish school board for the enforcement of contracts entered into by the school board or for recovery of damages for the breach thereof without necessity of any further authorization by the legislature. (Emphasis added.)
 § 81. General powers of city and parish school boards
 * * *
 C. Each city or parish school board is authorized to make such rules and regulations for its own government, not inconsistent with law or with the regulations of the State Board of Elementary and Secondary Education, as it may deem proper.
 * * *
 E. (1) Each city or parish school board shall exercise proper vigilance in securing for the schools of the district all funds destined for the support of the schools, including the state funds apportioned thereto, and all other funds. (Emphasis added.)
This office has consistently recognized that school boards, under their regulation and rule-making authority, have very broad powers, including the authority to enter into contracts. Attorney General Opinion Nos. 93-375, 92-728, 89-119 and 79-561. While the Board possesses those powers delegated to it, our jurisprudence has clearly recognized that, in addition to these express powers, school boards have those implied or additional powers as are necessary to carry out their statutory duties.Louisiana Associated General Contractors, Inc., et al. v. CalcasieuParish School Board, cited supra; Disposal Systems, Inc. v. CalcasieuParish School Board, 243 So.2d 915 (La.App. 3rd Cir. 1971) and LincolnParish School Board v. Ruston College, 162 So.2d 419 (La.App. 2nd Cir. 1964) writ denied.
The initial issue to be determined is whether a valid legal duty or obligation exists for the Board to participate in the endeavor with the Association. In resolving this issue, we note the provisions of R.S.33:9020, et seq., collectively referred to as the Cooperative Economic Development Law (Law). Section 9021 provides, in pertinent part, with respect to the findings, declarations of necessity and purpose for the Law's enactment:
It is hereby found and declared that:
 (1) There exists in some of the regions, parishes and municipalities of the state a condition of substantial and persistent unemployment, underemployment, and other forms of economic distress.
 (2) Such unemployment, underemployment and other forms of economic distress cause hardships to many individual citizens of the state and their families, waste invaluable human resources, and adversely affect the welfare and prosperity of the people.
 (3) The maintenance of the economy of the several local governmental subdivisions of the state at a high level is necessary to overcome these problems and is vital to the best interest of the state.
 (4) The maintenance of the economy of the several local governmental subdivisions of the state at a high level is a matter of public policy and the cooperative economic development activities and powers prescribed and conferred by this Chapter are for a public purpose for which public money may be expended.
 (5) As the maintenance of the economies of said local political subdivisions at a high level is found and declared to be a public purpose, the state's assistance to areas and regions of substantial and persistent unemployment, underemployment and other forms of economic distress is necessary for the employment of effective steps in the planning, promotion, and financing of local economic development.
 (6) State authorization to local governmental subdivisions, public corporations and public benefit corporations to engage in cooperative endeavors with each other, the United States or its agencies, or with any public or private associations, corporations, or individuals for the purpose of economic development would help said local governmental subdivisions to alleviate the conditions of unemployment, underemployment, and other forms of economic distress presently existing in their areas, and as such, is in the public interest.
 * * *
 (8) Public-private partnerships which take advantage of the special expertise and experience of representatives of the private sector can be among the most effective programs to encourage and maintain economic development.
 (9) The economic development needs of the state of Louisiana require the existence of entities which can function as public-private partnerships, taking advantage of the congruence between the public interest and the interest of business and industry. (Emphasis added.)
Section 9022 provides definitions for some of the terms contained in the Law:
 The following terms, whenever used or referred to in this Chapter, shall have the following meaning unless a different meaning is otherwise clearly indicated in the context:
 (1) "Cooperative endeavor" means any form of economic development assistance between and among the state, its local governmental subdivisions, political corporations, public benefit corporations, the United States or its agencies, or any public or private association, corporation or individual. The term "cooperative endeavor" shall include but not be limited to cooperative financing, cooperative development, or any other form of cooperative economic development activity.
 (2) "Cooperative financing" means any method of financing an economic development project between and among the state, its local governmental subdivisions, political corporations, public benefit corporations, the United States or its agencies, or any public or private association, corporation or individual. Said methods shall include loans, loan guarantees, land write-downs, grants, lease guarantees or any form of financial subsidy or incentive. (Emphasis added.)
Section 9023 provides for the creation of nonprofit economic development corporations such as the Association:
 A. There is hereby authorized in the state and each local governmental subdivision of the state the creation and organization of non-profit economic development corporations, hereinafter sometimes referred to as corporation.
 * * *
 C. The corporation is hereby authorized and shall have all the authority and power necessary in order to carry out and effectuate the purposes and provisions of this Chapter, including without limiting the generality of the foregoing, the following specific powers which shall be in addition to others herein granted.
 * * *
 (6) To make, enter into and execute all contracts and agreements, with any person or agency, public or private, necessary or incidental to the performance of its duties and the execution of its powers under this Chapter.
 (7) To borrow money and to apply for and receive and accept from any federal agency, the state, and/or the political subdivisions of this state or from any source, public or private, grants, loans, or advances for or in the aid of any economic development cooperative endeavor, project or projects, and to give such security as may be required and to enter into and carry out contract of agreements in connection therewith.
 * * *
 (11) To enter into partnerships, joint ventures and other relationships with any federal or state, or local governmental agencies or with any private or public firm, partnership, corporation or other entity. (Emphasis added.)
Section 9024 provides that the Association be incorporated as a private nonprofit corporation:
 A. After the application or applications have been approved by such governing authority the proposed corporation shall incorporate itself and shall operate as a private nonprofit corporation pursuant to the laws of Louisiana . . .
 * * *
 (C) (2) (a) Public officials including the chief executive of the local governmental subdivision or members of the governing body of the local governmental subdivision are also permitted and encouraged to serve as members of the board of directors of such a corporation, provided that in no case shall public officials constitute a majority of a quorum of such board of directors, nor shall a number of members of a governing authority, which would constitute a quorum of that governing authority, serve together on such a board of directors.
Section 9034 expressly authorizes the direct participation of local governmental subdivisions in carrying out the purposes embodied in the Law.
As can be gleaned from the above, both the Board and the Authority are vested with broad and sweeping powers, including the authority to enter into cooperative endeavor agreements for cooperative financing in an effort to stimulate the economy and alleviate the substantial and persistent unemployment, underemployment and other forms of economic distress existing in St. Martin Parish. The Legislature does not define the terms "local governmental subdivisions", "public corporations" and/or "local political subdivisions", as those terms are used in the Law, so as to exclude any of the entities participating in the endeavor. Neither shall we.
Accordingly, we find the presence of a legal obligation or duty, via the statutory provisions enumerated above, for the Board and the other governmental participants to enter into a cooperative endeavor agreement with the Authority. We turn now to the second criterion — that the cooperative endeavor serve a public purpose.
As previously noted, our Legislature unequivocally recognizes that the alleviation of economic distress and the maintenance of the economies of our political subdivisions at an acceptable level constitute public purposes for which public funds may be expended. R.S. 33:9021 and 9022. The complexities involved in a successful endeavor to bolster economic development and attract new businesses and industries, especially in distressed rural areas of this State with little or no industry, are many. The potential benefits of a successful economic development program will inure, not only to the Parish of St. Martin, but also to the Cities of Breaux Bridge and St. Martinville, the Village of Parks and the St. Martin Parish School System. In order to achieve these benefits, governmental entities, such as the Board, must be multi-faceted and innovative.
The Law is carefully crafted by our Legislature to enable all of these participants to, not only reap the rewards of these benefits, but also to share in the responsibilities of such an endeavor. In other words, these individual participants cannot function in a vacuum, oblivious to the impact they have on each other and the goals common to, and shared by, all.
Obviously, in the Board's case, a successful economic development program will generate increased sales and property taxes which the Board desperately needs to attract and retain qualified teachers and other employees, and construct and maintain its buildings and grounds. As previously noted, the Board is statutorily mandated to "exercise proper vigilance in securing for the schools of the district all funds destined for the support of the schools".
In addition, partnerships with new businesses and industries will enable the Board, its teachers and students to actively participate in invaluable Federal, State and local programs. Such programs include, but are not limited to, Adopt-a-School, Cooperative Office Education, Marketing Education, School-to-Work, Cooperative Health Occupation, Construction Trades Workforce Development, Banking and Finance Career, and Prostart. The participation and success of each of these programs necessarily depends upon the hands-on participation of representatives from private business and industry. These representatives provide oversight for the development of curricula, mentoring programs and the continued summer employment of students. Without the infusion and retention of businesses and industries, these programs cannot exist. We conclude that the obligation created serves a public purpose which is within the scope of the Board's authorized duties set forth in R.S. 17:51, 81 and the Law.
The third criterion is that the benefits resulting from the cooperative endeavor and realized by the Board are commensurate or proportionate to the financial obligation incurred by the Board. The Board's financial participation will assist in attracting badly needed new businesses and industries to St. Martin Parish. The infusion of new businesses and industries will relieve the persistent forms of economic distress being experienced in this rural area. It will also increase sales and property tax revenues needed to preserve the integrity of the Board's staff and physical facilities. The Board's participation will also enable teachers and students to participate in the many programs designed to provide practical on-the-job training and permanent employment opportunities upon graduation.
While these benefits are somewhat intangible, they are, nevertheless, substantive, and one of the important contributions which the Board can make to the quality of life of its teachers, students, parents and the general citizenry. We therefore conclude that the nominal financial participation assumed by the Board is not so disproportionate to the public benefits to be realized, so as to render this participation unconstitutional. Accordingly, we find that the Board has met the third criterion of proportionality and commensurability.
To find otherwise would, in effect, challenge the constitutionality of R.S. 33:9020, et seq., and the legislative findings contained therein. In this regard we must be guided by the general rule that all statutes are presumed to be constitutional. In Polk v. Edwards, 626 So.2d 1128
(La. 1993), the Court held:
 An elementary principle of statutory construction in constitutional law holds that all statutory enactments are presumed to be constitutional. Interstate Oil Pipeline v. Guilbeau, 217 La. 160, 46 So.2d 113 (1950); State on behalf of J.A.V., 558 So.2d 214 (La. 1990). Unless the fundamental rights or privileges or immunities of a person are involved, a strong presumption exists that the legislature, in adopting legislation, has acted within its constitutional authority. Board of Directors of Louisiana Recovery Dist. v. All Taxpayers, Property Owners, etc., 529 So.2d 384 (La. 1988). This presumption is especially forceful in the case of statutes enacted to promote a public purpose. Id. at 387; See United States v. Jacobs, 306 U.S. 363, 369-70, 59 S.Ct. 551, 83 L.Ed. 763, 768
(1939) . . .
We are unaware of any jurisprudence declaring Section 9020 et seq. to be unconstitutional. Accordingly, the constitutionality of this statute must be presumed as applied in this opinion, absent jurisprudence to the contrary. In accord is Attorney General Opinion No. 01-40.
We further opine that the participation of the Board with the Association should be effected pursuant to a formal cooperative endeavor agreement. Obviously, the Board's primary duties and functions relate to the educational development of its students. Therefore, we stress that the agreement clearly reflects: (1) the reciprocal rights and duties of each party; (2) the nature and description of the public educational
benefits to be derived therefrom; and (3) that the public educational
benefits are proportionate to the expenditure made by the Board.
In summary, and based upon the additional information you have presented for our consideration, we find a sufficient nexus exists upon which to base a formal cooperative endeavor between the Board and the Association. In light of this supplemental information, Attorney General Opinion No. 00-291 is modified to concur herewith. Be advised that the opinions expressed herein are limited to the specific facts presented and the law applicable thereto.
We parenthetically note that Opinion No. 00-291 references Opinion Nos. 97-408 and 92-536. We have reviewed both opinions and conclude that the factual scenarios presented therein are inapposite to the issue at hand. Opinion No. 97-408 opines that a school board could not lease an abandoned school site to a nonprofit organization for a nominal rate of $1.00 per year. Opinion No. 92-536 holds that a school board could not donate school board property to a group of private individuals who would preserve the historical significance of the buildings and possibly convert them into an economic development center.
Both transactions were properly deemed to be an unconstitutional donation. We further note the absence of any indication, whatsoever, that the necessary elements of a valid cooperative endeavor for economic development were discussed, or even contemplated by the requestors.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH,3/sfj
DATE RECEIVED:
DATE RELEASED: September 17, 2001